Nov. Term,
1853.

GARDNER
v.
THE STATE.

Saturday,
December 31.

GARDNER v. THE STATE.

Every person is presumed to have a christian name until the contrary is shown.

A complaint under the act of 1852 establishing Courts of Common Pleas, for an assault and battery, did not set out the christian name of the defendant, but only the initials. *Held,* that the defendant could avail himself of the omission by motion to quash, as well as by plea in abatement.

In *January,* 1853, the R. S. of 1852 not being in force, informations for misdemeanors were not authorized by law, but only a sworn charge or complaint.

The refusal of the Circuit Court in a criminal case to hear more than two witnesses to the same point, cannot be supported as a rule of decision. The leaning of the courts should be to allow as wide a latitude to the defence, in criminal cases, as is consistent with a proper dispatch of the public business.

But, in most instances, the number of witnesses that shall be heard on a single point is a matter resting in the discretion of the Court, and to bring it properly within the cognizance of the Supreme Court, the facts showing an abuse of that discretion must be presented in the record.

The doctrine laid down in *Cooper v. McJunkin, ante,* p. 290, in relation to the right of teachers to chastise their pupils, adhered to.

As a matter of public policy and to prevent breaches of the peace] courts should hold a strong and stern hand over teachers who abuse their sacred and responsible position by the infliction of brutal corporal punishments.

Nov. Term,
1853.

GARDNER
v.
THE STATE.

APPEAL from the *Decatur* Circuit Court.

Saturday,
December 31.

STUART, J.—The state, by her attorney prosecuting, filed a charge, verified by affidavit, against *Gardner*, for assault and battery. The charge was made at the *January* term of the *Decatur* Common Pleas. It appears that *Gardner* was a school-teacher, and the party assaulted, his pupil. While they stood in such relations to each other, a controversy arose between them about the spelling of the word "commerce." The pupil, *Stuart*, having missed in spelling the word, and refused to try again, *Gardner* became angry and commenced beating him. He wore out two whips on him, and in the progress of the chastisement administered to *Stuart* a blow or two with his fist on the head, and a couple of kicks in the face. Two witnesses for the defence, who were also pupils and present, testified negatively that they did not see the blows nor the kicks.

The cause was submitted to a jury, verdict guilty, fine 2 dollars, and judgment accordingly.

In the progress of the cause several objections were taken, which are urged here for a reversal. Among the most material are, 1. That the christian name of the defendant is not set out in the charge, but only initials. He is described as " one *A. G. Gardner*, late of said county." For this cause the defendant moved to quash the complaint. The criminal code established by the revision of

VOL. IV.—57

Nov. Term, 1853.

GARDNER
v.
THE STATE.

1852 provides that the indictment or information must contain, amongst other things, the names of the parties. Vol. 2, R. S. 1852, p. 367. But this code was not in force in *January*, 1852. *Jones* v. *Cavins, ante*, p. 305. Under the old system, which was still in force, the charge was equally defective. The only question is, how is the defendant to take advantage of it, by plea in abatement or by motion to quash? Had the complaint charged *Gardner* by a wrong christian name, his proper course would have been to plead in abatement. 1 Chitty Crim. L. 202. But when there is no christian name given, and no allegation that the party has not a christian name, nor that it is unknown, the defect being apparent on the face of the record, it would seem on principle that a plea in abatement was unnecessary. The office of a plea is to inform the Court of some extrinsic matter. Here the defect of name is clearly before the Court. For every person is presumed to have a christian name until the contrary is made to appear by proper averment. The question of sufficiency can in this instance be as fully raised by motion to quash as by plea in abatement. And though *Chitty* lays it down as the rule that a plea in abatement will lie in such cases, yet he adds, that for objections apparent on the face of the indictment itself, without reference to any extrinsic fact, it is more usual to move to quash. 1 Chitty Crim. L. 445.

The motion to quash was met by a counter motion to file an information in which the christian name of *Gardner* was alleged to be unknown. The Court overruled the former and sustained the latter. This was erroneous. In *January*, 1853, the R. S. of 1852 were not in force, and informations such as that filed were not authorized by law, but only a sworn charge or complaint. *Lindville* v. *The State*, 3 Ind. R. 580.

The second error complained of is, that the Court refused to hear more than two witnesses to the same point on the part of the defence. As a rule of decision this position could not be supported. The leaning of the courts should be to allow as wide a latitude to the de-

fence in criminal cases, as is consistent with a proper
dispatch of the public business.   So that it resolves itself,
in most cases, into a matter resting in the discretion of
the Court.   To bring it properly within our cognizance,
the facts showing an abuse of that discretion must be
presented in the record.   Perhaps the arbitrary course of
judges at *nisi prius*, in refusing to put in the record by bill
of exceptions the facts as they actually occurred, might
be better guarded by legislative enactment.

The instructions given to the jury are objected to.   In
a recent case we had occasion to examine the law relative
to the right of teachers to chastise their pupils.   *Cooper
v. McJunkin*, *ante*, p. 290.

We adhere to the doctrine there laid down.   Such out-
rages on the child, even though he be truant and perhaps
stubborn, are more than parental feeling can bear.   To
prevent retaliation and breaches of the peace, it becomes a
matter of public policy to punish the offender.   If the law
in such cases is properly administered, those whose feelings
are outraged will have no apology for taking redress into
their own hands.   They will peaceably abide the adjudi-
cation of the courts.   If, on the contrary, the law is loosely
and indulgently administered, the tendency is to stimulate
the aggrieved to seek personal redress.   As a matter of
public policy, courts and juries should therefore hold a
strong and stern hand over teachers who abuse their sa-
cred and responsible position.

*Per Curiam.*—The judgment is reversed with costs.
Cause remanded, &c.

*J. S. Scobey*, for the appellant.
*R. A. Riley*, for the state.