DEWAIN CAMPBELL ET AL. *v.* STATE OF INDIANA.
HARRY F. KNOTTS JR. *v.* STATE OF INDIANA.

[No. 772S96. Filed July 17, 1972.]

*J. Conrad Maugans, Bayliff, Harrigan, Cord & Maugans,* of Kokomo, for appellant, Campbell, *William A. Freihofer, James A. Schmidt,* of Indianapolis, for appellant Knotts, *Thomas J. Young, Young & Young,* Amicus Curiae.

*Theodore L. Sendak,* Attorney General, *Mark Peden,* Deputy Attorney General, *Robert A. Smith,* Assistant Attorney General, for appellee, *Le Roy K. Schultess,* of La Grange, *Winslow Van Horne, Van Horne & Van Horne,* of Auburn, Amicus Curiae.

ARTERBURN, C.J.—These cases were consolidated for the purposes of appeal. The facts in the two cases are somewhat different, but the outcome of both is dependent on the same question of law. The cases were decided separately in the Court of Appeals and were consolidated upon transfer to the Supreme Court. See opinions of the Appellate Court reported in 269 N. E. 2d 765 and 274 N. E. 2d 400.

In the *Campbell* case the appellants sustained personal injuries as a result of a head-on collision with an automobile

traveling in appellant's lane of traffic upon a state-maintained highway. In their complaint appellants alleged negligence on the part of the state in that, after repaving the highway, it failed to: (a) mark with a yellow line the aforesaid State Road 221 where it is unsafe to pass; and (b) carelessly and negligently failed to install no passing signs along Road 221 or any other signs indicating to the traveling public that the public highway was unsafe for passing. Appellants also contended that the road as maintained constituted a nuisance.

In the *Knotts* case, the appellant sued the City of Indianapolis and the State of Indiana complaining that he sustained $100,000 in damages because of personal injuries incurred as the result of a fall on a crosswalk in Indianapolis. Appellant alleged that the injuries were the result of the negligent state of repair of the crosswalk. The fall occurred on the crosswalk at the intersection of Market Street and Monument Circle in Indianapolis. Monument Circle is a part of the state highway system and as such, the State of Indiana is responsible for its care and maintenance. In both *Campbell* and *Knotts* the state filed a motion to dismiss in the trial court alleging that there was no basis upon which relief could be granted premised upon the doctrine of sovereign immunity. In both cases the trial court sustained the motion and the Court of Appeals affirmed the rulings. Thereafter, both appellants petitioned this court for transfer to resolve the status of the doctrine of sovereign immunity in Indiana.

Both the *Campbell* and *Knotts* briefs raise the issue of whether the State of Indiana still recognizes the common law doctrine of sovereign immunity. The doctrine in its present form is a far cry fom the original common law principle which exempted the sovereign from liability in court on the basis that "the king could do no wrong." The doctrine has been amended and eroded until the most that remains is an abstract and confusing principle which finds literally no continuity between jurisdictions. The purpose for which the doctrine was created has long since

vanished and it is now time to finally reexamine the basis of the rule.

The original adoption of the doctrine in America following the Revolutionary War was founded on the premise that the new government was not financially secure enough to face claims of negligence in its governmental activities. Therefore, the English Common Law was adopted and the same immunity which protected the King from liability was adopted to protect the states. The first inroad in Indiana to limit the doctrine occurred in the case of *City of Goshen* v. *Myers* (1889), 119 Ind. 196, 21 N. E. 657, where the court held that:

> "In our opinion, it was the duty of the city of Goshen to keep the bridge under consideration in repair. The public bridges within the limits of the cities of the State, located upon the streets and public highways of the cities—and such cities, where they take charge of the same, are liable to persons suffering injury or loss . . ." *Id.* at 199, 21 N. E. 658-59.

Out of early forms of municipal liability grew the current governmental-proprietary standard which has been applied to the state and its subdivisions. This is in essence a court-made distinction as to the types of activities which governmental bodies perform, created to ameliorate the harshness of total governmental immunity. It is generally held that if a governmental body is negligent in performing a proprietary function, it will be liable for its negligence; while, if its activity is classified as governmental, the defense of sovereign immunity shall apply.

Exactly what constitutes a proprietary function as opposed to a governmental function has never been clearly enunciated by the courts, and this failure to establish a criteria has led to the generally confused state of the bench and bar in the application of the doctrine of sovereign immunity. Deciding on useful guidelines between rather obscure, whimsical notions enunciated by the appellate courts throughout the country has caused enormous conflicts in the courts in the past decade.

However, the fact that the doctrine is beyond the scope of explicit definition has not halted its application. In the case of *Flowers* v. *Board of Commissioners of County of Vanderburgh* (1960), 240 Ind. 668, 168 N. E. 2d 224; this court held, in regard to appellant recovering for injuries sustained in a skating rink operated by the county and for use of which admission was charged:

> "[I]t is the well-settled general rule throughout the United States that while a county is not liable, in the absence of statute for torts committed by it in the exercise of its governmetal functions, it is nevertheless liable for torts committed in a proprietary capacity. *Id.* at 671, 168 N. E. 2d 225.
>
> As to civil cities, there is numerous authority in this state distinguishing governmental functions from proprietary functions and holding civil cities liable for torts occurring in the performance of proprietary functions. *Id.*
>
> [W]e see no valid reason why the well-settled rule holding civil cities liable for damages for torts occurring in the performance of their proprietary functions should not be applied to counties." *Id.* at 672, 168 N. E. 2d 225.

Further erosion of the doctrine followed in the case of *Brinkman* v. *City of Indianapolis* (1967), 141 Ind. App. 662, 231 N. E. 2d 169, *transfer denied;* in which the Appellate Court abolished the right of a city to claim the defense of sovereign immunity regardless of whether the nature of the act was governmental or proprietary. The court reasoned:

> "The governmental-proprietary rule, however, often produces legalistic distinctions that are only remotely related to the fundamental considerations of municipal tort responsibility. As for example, it does not seem to be good policy to permit the chance that a school building may or may not be producing rental income at the time determine whether a victim may recover for a fall into a dark and unguarded basement stairway or elevator shaft. Neither does it seem to be good policy to find that a municipal garbage truck is engaged in a *nonimmune* proprietary function when enroute from a wash rack to the garage while the same truck is engaged in an *immune* governmental function when enroute to a garbage pickup." *Id.* at 665, 231 N. E. 2d 171.

The extent to which a municipal corporation should be held liable for torts committed by its officers or employees in the course of the employment is a perplexing problem that has been the subject of litigation on many occasions. There has been a general apprehension that fraud and excessive litigation would result in unbearable cost to the public in the event municipal corporations were treated as ordinary persons for purposes of tort liability. On the other hand the unfairness to the innocent victim of a principle of complete tort immunity and the social desirability of spreading the loss—a trend now evident in many fields— have been often advanced as arguments in favor of extending the scope of liability. It is doubtful whether the purposes of tort law are well served by either the immunity rule or its exceptions. After careful consideration we are of the opinion that *the doctrine of sovereign immunity has no proper place in the administration of a municipal corporation.*" (emphasis added)  *Id.* at 666, 231 N. E. 2d 172.

The next logical step was taken in the case of *Klepinger* v. *Board of Commissioners* (1968), 143 Ind. App. 155, 239 N. E. 2d 160, *transfer denied.* The court abrogated immunity for all counties in Indiana. In the aftermath of *Klepinger* all that remained was immunity to the state. The court in *Klepinger* made it clear that the governmental-proprietary distinction was to be completely disregarded in cases involving city or county immunity.

In *Perkins* v. *State* (1969), 252 Ind. 549, 251 N. E. 2d 30; the Supreme Court utilized the governmental-proprietary function to limit the application of the doctrine on the state level. In *Perkins,* the appellants fell ill due to the contamination of a lake with raw sewage. They had rented a lakeside cottage in a state park for which the maintenance thereof was the duty of the state. The trial court sustained the state's motion to dismiss on the ground that the court did not have jurisdiction due to the sovereign immunity of the state. The Supreme Court reversed, holding that such operation was a proprietary activity, and, therefore, the state could not avail itself of the immunity privilege. Following the holding in *Perkins,* all that remained of sovereign immunity was immu-

nity on the part of the state from negligent acts occurring while the state was in performance of a solely "governmental function." Exactly what a governmental function constituted was not yet clearly defined. However, this court in *Perkins* recognized that municipal corporations and county governments had been eliminated from the scope of sovereign immunity as to tortious acts.

With only a mere fraction of the original doctrine remaining, we are faced with the task of attempting to eliminate the confusion surrounding the doctrine.

The argument has been presented that elimination of the doctrine of sovereign immunity will impose a disastrous financial burden upon the state. Assuming there is any relevancy to this contention, we point out that the abrogation of sovereign immunity on the state level is consistent with conditions already existing in cities and counties in this state. If city and county governments can withstand the consequences of such liability, where traffic hazards seemingly are greater, the state should be able to also bear such burden.

We may also add that the elimination of sovereign immunity means a more equitable distribution of losses in society caused by the government unto members of society, rather than forcing individuals to face the total loss of the injury.

The state argues that abolition of sovereign immunity will result in a great number of problems for the state. Inability to collect payment for claims against the state, inability of the state to secure adequate insurance, and prospective legal chaos are cited as examples of some of these problems. The arguments which the state presents are questions which properly belong to the legislature in facing and solving the problems of liability. Such arguments do not apply to the doctrine in its present state. We are only concerned with the common law justification of the doctrine. This court has spoken as to its view on the fabrication of new

grounds for outmoded concepts in *Troue* v. *Marker* (1969), 253 Ind. 284, 252 N. E. 2d 800; where HOLMES, *The Common Law* at 5 (1881), was quoted with approval as follows:

"The customs, beliefs, or needs of a primitive time establish a rule or a formula. In the course of centuries the customs, belief, or necessity disappear, but the rule remains. The reason which gave rise to the rule has been forgotten, and ingenious minds set themselves to inquire how it is to be accounted for. Some ground of policy is thought of, which seems to explain it and to reconcile it with the present state of things; and then the rule adapts itself to the new reasons which have been found for it, and centers on a new career. The old form receives a new content, and in time even the form modifies itself to fit the meaning which it has received." *Id.* at 290, 252 N. E. 2d at 804.

The court in *Troue,* in answer to the arguments for the continued existence of an archaic theory based on new principles, stated:

"Here we have the type of reasoning and attempted analysis, such as Holmes points out above, resorted to when an ancient doctrine has lost its underpinning by social changes. The courts frequently attempt to shore up the doctrine by offering reasons for its existence inconsistent with its origin. The reasoning here appears to us to be obviously specious." *Id.,* at 291, 252 N. E. 2d at 804, 805.

We feel that the above quotes are on point to the issues presented to this court by the state. The proper forum for such argument is in the legislature on the topic. The existence and application of the doctrine of sovereign immunity is a judicial question.

We do not mean to say by this opinion that all governmental units can be held liable for any and all acts or omissions which might cause damage to persons. For example, one may not claim a recovery because a city or state failed to provide adequate police protection to prevent crime. *Simpson's Food Fair* v. *City of Evansville* (1971), 149 Ind. App. 387, 272 N. E. 2d 871, *transfer denied.* Nor may

one recover damages because a state official made an appointment of an individual whose incompetent performance gives rise to a suit alleging negligence on the part of the state official for making such an appointment. Likewise the United States Supreme Court has recognized a judicial immunity. *Pierson* v. *Ray* (1967), 386 U. S. 547, 18 L. Ed. 2d 288, 87 S. Ct. 1213. On this subject matter Professor Prosser, in his treatise, stated the following:

> "At the very outset it was more or less obvious that some vestige of the governmental immunity must be retained. It was, for example unthinkable that either state [or] a municipality should be held liable for a wrong decision of its courts, for an erroneous evaluation of property by a tax assessor. In several of the decisions abrogating the immunities, there was language used which reserved the possibility that there might still be immunity as to 'legislative' or 'judicial' functions, or as to acts or omissions of government employees which were 'discretionary.' " Prosser, *Law of Torts* § 131, at 986 (4th ed. 1971.)

Therefore, it appears that in order for one to have standing to recover in a suit against the state there must have been a breach of duty owed to a private individual.

Finding no basis for the continuation of the doctrine of sovereign immunity as applicable to the state any more than it is applicable to municipal corporations and counties, we hold that such a defense by the state is not available to any greater extent than it is now available to municipal corporations and counties of this state. Judgment of the trial court is reversed with directions to vacate by ruling on the motion to dismiss in each case and to enter an order overruling such motion and for further proceedings in conformity with this opinion.

All Justices concur.

Note.—Reported in 284 N. E. 2d 733.