STATE OF INDIANA, INDIANA STATE HIGHWAY COMM.
AND MILLARD CLAWSON v. HERSCHEL TURNER.

[No. 172A47. Filed August 31, 1972. Rehearing denied September 22, 1972. Transfer denied January 9, 1973.]

*Theodore L. Sendak,* Attorney General, *Darrel K. Diamond,* Deputy Attorney General, for appellants.

*Clelland J. Hanner,* of Rockville, *Jerdie D. Lewis,* of Terre Haute, for appellee.

LYBROOK, J.—This appeal arises from a negligence action wherein appellee was awarded a jury verdict for $150,000.00, as damages for personal injuries sustained when the vehicle he was driving collided with a State Highway truck.

Appellants' Motion to Correct Errors alleges that the trial court erred in entering judgment against the State for three reasons; (1) The State is immune from liability for damages arising from governmental functions, (2) The judgment violates Article 4, § 24 and Article 10, § 3 of the Constitution of the State of Indiana, and (3) In the alternative, the State's liability is limited to the policy limits of the applicable liability insurance policy, by IC 1971, 27-7-4-2; Ind. Ann. Stat. § 39-1819 (Burns 1965).

On October 5, 1967, appellant Clawson was driving an empty dump truck as an employee of the appellant Indiana State Highway Commission, an agent of the State of Indiana. While traveling on U.S. Highway 41 in Parke County he collided with a vehicle operated by appellee Turner, who sustained severe personal injuries as the proximate result of the collision.

Appellants' first issue concerns the Doctrine of Sovereign Immunity. Since this case was argued,[1] the Indiana Supreme Court decided appellants' first contention in *Campbell* v. *State* (1972), 259 Ind. 55, 284 N. E. 2d 733. The Court reviewed the leading cases dealing with the doctrine, pointing out its gradual erosion. *Flowers* v. *Board of Commissioners* (1960), 240 Ind. 668, 168 N. E. 2d 224, abolished the defense of immunity for counties engaged in proprietary functions, *Brinkman* v. *City of Indianapolis* (1967), 141 Ind. App. 662, 231 N. E. 2d 169, abrogated the doctrine as it applied to cities, *Klepinger* v. *Board of Commissioners* (1968), 143 Ind. App. 155, 239 N. E. 2d 160, (Transfer denied) removed the immunity of counties by abolishing the governmental-proprietary distinction, and *Perkins* v. *State* (1969), 252 Ind. 549, 251

1. Oral argument in this cause was heard on May 3, 1972 in the historic setting of the original State Capitol Building at Corydon, in observance of Law Day. The recently adopted Judicial Amendment to the Indiana Constitution and the implementing statute permit the divisions of the newly created Court of Appeals to sit in designated places other than Indianapolis. This was the first such occasion. Following the argument a reception and dinner were hosted by the Harrison and Crawford County Bar Association.

N. E. 2d 30, held that the State was liable for negligently causing injuries while acting in a proprietary capacity.

*Campbell* v. *State, supra,* swept away the last vestige of this outmoded common law doctrine, by removing the immunity of the State while performing a governmental function. The Court concluded by saying:

> "Finding no basis for the continuation of the doctrine of sovereign immunity as applicable to the state any more than it is applicable to municipal corporations and counties, we hold that such a defense by the state is not available to any greater extent than it is now available to municipal corporations and counties of this state."

As a result of *Campbell, supra,* the State of Indiana is no longer immune from liability for damages caused by its negligence in situations such as the case at bar. Therefore, appellants' first contention fails.

Appellants' next proposition concerns Article 4, § 24, Constitution of Indiana, which reads:

> "Provision may be made, by general law, for bringing suit against the State, as to all liabilities originating after the adoption of this Constitution; but no special act authorizing such suit to be brought, or making compensation to any person claiming damages against the State, shall ever be passed."

Appellants point out that under the above provision the Legislature *may* provide for suit against the State but that in fact our Legislature has not done so.

Appellants' second contention was concisely dealt with in *Perkins* v. *State, supra,* wherein the Court said:

> "There is no plain, unequivocal statement in the Constitution that the State of Indiana shall be immune against suits imposing a liability for damages; only an inference might be drawn from the above section. As we read this section it occurs to us that the framers of the Constitution assumed that at common law the State was immune from suit and authorized the legislature to modify such liability to the extent it may see fit, providing

that no private acts or special acts were passed for the benefit of some individual."

Appellants contend that the trial court's entry of judgment against the State also violates Article 10, § 3 of our State Constitution which states that: "No money shall be drawn from the Treasury, but in pursuance of appropriations made by law." We are not immediately concerned with the manner of enforcing this judgment, but it is well settled that this court, like the other courts of this State, possesses an array of inherent powers sufficient to enforce its final judgments. Article 1, § 12 of the State Constitution provides:

"All courts shall be open; and every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay."

Appellants finally contend that the trial court erred in entering judgment against the State and its agency in the full amount of the verdict since the same was in excess of the limits of their liability insurance policy and violated the express statutory provisions of IC 1971, 27-7-4-2; Ind. Ann. Stat. § 39-1819 (Burns 1965 Replacement). The applicable portion of this statute reads as follows:

"The state, or any municipal corporation thereof, is hereby empowered to purchase policies of insurance insuring the officers, appointees, agents and employees of the state or municipal corporation against loss or damage because of the liability imposed by law upon such officers, appointees, agents and employees for loss or damage resulting from bodily injury to, or death of, or property damage sustained by, any person or persons, caused by accident and arising out of the ownership, maintenance, hire, or use of any motor vehicle owned, by the state or such municipal corporation, and any real or other personal property whatsoever, owned, hired, or used by the state or such municipal corporation, in the business of the state or such municipal corporation, and to pay the premiums thereon out of public funds. In no event shall the state or any municipal corporation thereof, be liable, in any case, in any amount in excess of the maxi-

mum amount of valid insurance in full force and effect and covering the particular motor vehicle or particular real or personal property involved in the accident causing such loss or damage: . . ."

\* \* \*

"No such policy of insurance shall be purchased by or issued or delivered to the state or to any municipal corporation thereof by any insurance carrier . . . unless there shall be contained within such policy a provision that if there arises or may arise a claim, suit or cause of action in relation thereto, such insurance carrier will not set up, as a defense, the immunity of the state or of such municipal corporation, but such insurance carrier shall be permitted to plead and interpose every other defense that would be available to the insured if such insured were a natural person or a private corporation. In no event shall the insurance carrier be liable, in any case, in any amount in excess of the maximum amount named in the policy of insurance."

The above statute was enacted in 1941 long before *Flowers, Brinkman, Klepinger, Perkins* and *Campbell, supra,* were decided. Sovereign immunity was the law of the land. The statute was necessitated by and based upon the then firmly entrenched doctrine that the State was immune from liability for its torts. This is evident by reading the statute itself, particularly that part which provides that the insurance carrier must state in the policy that it ". . . will not set up, as a defense, the immunity of the state or of such municipal corporation . . ."

When the statute was enacted, its provisions were in complete harmony with the governmental immunity then existing. However, since blanket immunity has been abolished by *Campbell* v. *State, supra,* that part of the statute limiting the liability of the State to the amount of its insurance coverage, is an anachronism.

Was the purpose of the insurance statute to protect the State? Obviously not. In 1941 the State was completely protected by the blanket of sovereign immunity and needed no further protection. Therefore, the Legislature must certainly have intended the statute to benefit injured persons, not the State. The statute was a humane effort to mitigate the harsh-

ness of the absolute immunity doctrine. The reason for limiting the liability to the maximum amount of the insurance was also necessitated by the immunity doctrine itself. Permitting recovery beyond the limits of insurance, would have in itself, abrogated the doctrine. Sovereign immunity was the basis upon which the statute rested.

The *Campbell* decision was a step forward establishing an enlightened policy. If it is to have meaning, the provision of the statute limiting recovery must be considered as no longer applicable because of the removal of its basis, sovereign immunity.

If the State were correct in its assertion that its liability is limited to its insurance coverage, not only would the *Campbell* case be rendered meaningless but the tort-feasor (the State) would be placed in the inconceivable position of determining the amount of its own liability.

If the extent of liability is to be arbitrarily determined by the amount of insurance, sovereign immunity could soon be virtually reinstated via the purchase of "low-limit" policies.

In *Klepinger* v. *Board of Commissioners, supra*, the following statement, though dicta, is pertinent:

> "It is further our opinion that in determining the tort liability of a county or a city, our courts can now ignore the governmental-proprietary distinction and render judgments and assess damages without regard to the policy limits of any insurance carried by the city or county."

In *Snyder* v. *Mouser* (1971), 149 Ind. App. 334, 272 N. E. 2d 627, the court quoted the above language from *Klepinger* with approval.

Appellants' third contention therefore must fail and the judgment must be, and is hereby, affirmed.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported in 286 N. E. 2d 697.