287 N.E.2d 552 (1972)
STATE of Indiana, Appellant (Defendant below),
v.
Lydia J. DALEY, Administratrix of the Estate of Melvin H. Daley, Deceased, Appellee (Plaintiff-below).
No. 771A128.
Supreme Court of Indiana.
September 26, 1972.
Rehearing Denied November 6, 1972.
Theodore L. Sendak, Atty. Gen., Darrel K. Diamond, Deputy Atty. Gen., for appellant.
Young & Young, Thomas J. Young, Lila J. Young, Indianapolis, Paul Smith, Webb, Webb, Smith, Pearce & Barr, Noblesville, for appellee.
*553 BUCHANAN, Presiding Judge.
CASE SUMMARY  This is an appeal by the defendant-appellant State of Indiana (the State) in a wrongful death action brought by plaintiff-appellee Lydia J. Daley (Daley) which resulted in a jury verdict of $400,000 for the death of her husband, Melvin H. Daley (the Deceased). We affirm.
FACTS  On August 19, 1966, the Deceased was driving a truck along Interstate Highway 65 in Indiana when a State employee, operating a State slope mower on the berm of Interstate Highway 65, suddenly swerved without warning directly into the Deceased's path. The Deceased lost control of his truck, which then collided with a bridge abutment, causing his death.
At the time of his death the Deceased was 34 years of age, with a normal life expectancy for his age (36.59 years), in good health, and had no physical impairments. The evidence showed that he was a good husband, father, and provider and joyfully participated in family life with his wife and two children.
During most of his employable years, the Deceased drove trucks as an occupation. For a few years he held jobs which permitted him to be home each night. At the time of his death he was again employed as a truck driver by a company which limited its business to short distance, specialized hauling.
At the time of his death the Deceased had been employed by his employer for about three months at an average weekly salary of $225.00. His average taxable income for the four complete years of 1962-1965, inclusive, was $4,746.95.
His employer testified that the Deceased was an "extraordinary employee" and that he was a "professional truck driver, a man who took pride in his work. I can remember him always coming a half-hour, 45 minutes early, checking his equipment, very conscientious, very likable type person, * * *. I consider him a real professional. * * * I can remember * * * him asking * * * on weekends whether it was alright for him to take the truck home and have it washed. I can still remember his family with a little Volkswagen automobile pulling up on Sunday around noon then with the two children and his wife, drop them off, take his truck, take it home, wash it, take it back in the afternoon, truck was immaculate, spotless."
The employer further testified that the nature of the hauling done by his company required special handling and that his company paid several percentage points above actual scale at the time of the fatal accident. Because it was special type work, the company always compensated its drivers accordingly.
The Deceased was a member of the Teamsters Union as were other employees of this particular company.
The uncontroverted testimony of an expert economist, Professor Roberts of Butler University, computed the Deceased's earnings from the date of his death until his retirement at age 65 to be in excess of $400,000 had the Deceased lived his life expectancy. By way of summary Professor Roberts' figures were:

 1. Total earnings lost from the date of death (August
 1966) to retirement at age 65 based on the
 Deceased's projected annual earnings for the year
 1966 and an expected 5% yearly wage increase for
 every year worked thereafter: $916,000
 2. Deduction for union dues, leaving: $913,000
 3. Deduction for the possibility of an early death
 during employment years based on mortality tables,
 leaving: $795,000
 4. $795,000 discounted to a present value, leaving: $459,000

The case was tried before a jury which returned a verdict of $400,000 for Daley and judgment was entered accordingly on February 3, 1971.
The State now appeals.

*554 ISSUES
ISSUE ONE. Is the State immune from liability for damages arising out of the negligent operation of its slope mower along a State highway?
ISSUE TWO. Did the trial court commit reversible error by entering judgment against the State for an amount in excess of the policy limits of the applicable liability insurance of the State?
ISSUE THREE. Are the damages awarded Daley in the amount of $400,000 so excessive as to be contrary to law?
As to ISSUE ONE, the State contends that highway construction, maintenance, and repair are government functions, are not proprietary in nature, and that the operation of a slope mower on the highway constitutes highway maintenance and such government activity is immune from tort liability. Also, various policy considerations are urged by the State for retention of the doctrine of sovereign immunity.
Daley's reply is, inter alia, that immunity of the State for careless operation of its motor vehicles is contrary to the basic concepts underlying the field of tort law; that it is illogical to grant immunity to the State and not to other political subdivisions of the State; that highway maintenance is a proprietary function which is exempt from sovereign immunity; and that policy considerations are inappropriate to judicial determination. Daley further takes the position that the doctrine of sovereign immunity is a creature of the common law and since it is inconsistent with modern conditions should be totally abrogated in the negligence area under consideration in conformity with the law of other states.
As to ISSUE TWO, the State interprets Ind. Ann. Stat. § 39-1819 (Burns 1965), I.C. (1971) 27-7-4-2 (hereafter the Insurance Statute), as clearly limiting any liability of the State to the amount of the policy limits. As the value of the liability insurance policy in this case is $15,000, any judgment in excess thereof is not within the limits of the liability insurance policy.
Daley's response is that this statute was enacted thirty years ago, at a time when the State was generally immune from liability for all of its activities, and the only purpose of the statute was to authorize the purchase of a liability insurance policy and to waive existing immunity to the extent of the insurance coverage. No immunity remains for the State to waive so the Insurance Statute is obsolete  and inapplicable.
As to ISSUE THREE, the State contends that the damages allotted in this case are so excessive as to be contrary to law because the facts show nothing to support a verdict of such magnitude.
Daley asserts that the evidence is clearly adequate to support the jury verdict which is reasonable in view of the uncontroverted evidence.

DECISION
ISSUE ONE  It is our opinion that the State is not immune from liability for damages arising out of the negligent operation of its slope mower along a State highway.
This case was argued on March 8, 1972, but our decision was judiciously postponed until the Indiana Supreme Court handed down its decision in the pending cases of Campbell v. State and Knotts v. State (consolidated) (Ind. 1972), 284 N.E.2d 733, which directly relate to Issue One and unquestionably govern our decision in this case. Campbell and Knotts were shortly followed by State v. Turner (Ind. App. 1972), 286 N.E.2d 697, which also discussed the doctrine of sovereign immunity for tort liability of the State in the area of maintenance and repair of State highways. There is no need for us to repeat or elaborate on the excellent treatment of this subject in those cases.
In Campbell and Knotts, Chief Justice Arterburn traces the history of the judicially created doctrine of sovereign immunity *555 in Indiana from the first limitation placed on the doctrine in 1889 to its present eviscerated state, and decided the remains of the doctrine insofar as it granted the State of Indiana immunity from tort liability arising out of maintenance and repair of public highways, should be afforded a decent burial. His graveside words were:
"Finding no basis for the continuation of the doctrine of sovereign immunity as applicable to the state any more than it is applicable to municipal corporations and counties, we hold that such a defense by the state is not available to any greater extent than it is now available to municipal corporations and counties of this state."
The facts of the case before us do not distinguish it in any significant way from Campbell and Knotts and Turner. The negligence in Campbell was failing to paint double lines on a state highway in the appropriate no passing zone and failure to erect no passing signs. In Knotts the negligence consisted of failure to repair a crosswalk. Turner differed only slightly in that the negligent act complained of involved negligent operation of a state highway truck.
Our conclusion must be as Judge Lybrook wisely commented in Turner:
"As a result of Campbell, supra, the State of Indiana is no longer immune from liability for damages caused by its negligence in situations such as the case at bar."
ISSUE TWO  It is our opinion that the trial court did not err in entering judgment against the State for an amount in excess of the policy limits of the applicable liability insurance policy.
We need tarry only momentarily to dispose of the State's argument that the Insurance Statute prohibits recovery in excess of the policy limits of $15,000. The Turner decision, with which we agree, specifically disposed of this exact question with this perceptive observation:
"When the statute was enacted, its provisions were in complete harmony with the governmental immunity then existing. However, since blanket immunity has been abolished by Campbell v. State, supra, that part of the statute limiting the liability of the State to the amount of its insurance coverage, is an anachronism.
"Was the purpose of the insurance statute to protect the State? Obviously not. In 1941 the State was completely protected by the blanket of sovereign immunity and needed no further protection. Therefore, the Legislature must certainly have intended the statute to benefit injured persons, not the State. The statute was a humane effort to mitigate the harshness of the absolute immunity doctrine. The reason for limiting the liability to the maximum amount of the insurance was also necessitated by the immunity doctrine itself. Permitting recovery beyond the limits of insurance, would have in itself, abrogated the doctrine. Sovereign immunity was the basis upon which the statute rested."
The assumption of the Insurance Statute is that sovereign immunity obtains. With that doctrine now abolished in this class of cases, the Insurance Statute is no longer a shield to limit the State's liability.
ISSUE THREE  It is our opinion that the damages awarded Daley in the amount of $400,000 were not so excessive as to be contrary to law.
The rules and formula governing review of damages on appeal were extensively treated by this court in Northern Indiana Public Service Co. v. Otis (1969), 145 Ind. App. 159, 250 N.E.2d 378. In Otis, Judge Sharp quoted with approval a statement of the general rule by Chancellor Kent in *556 Coleman v. Southwick (1812), 9 Johns. (N.Y.) 45, 6 Am.Dec. 253:
"`* * * The damages, therefore, must be so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line, for they have not standards by which to ascertain the excess.'" (Emphasis supplied.)
In Kavanagh v. Butorac (1967), 140 Ind. App. 139, 221 N.E.2d 824, this court said:
"For a formula then, our common law sets only the general guidelines for compensating the victim, each in its own way to be considered by the trier of facts and weighed to determine what the total compensation will be. Because of this personal nature of each case and since the decision is unique to the particular set of facts our courts have said the trier of facts is to be given `sound discretion,' and `liberal discretion' where damages cannot be defined and calculated with mathematical certainty or by any exact standard." (Emphasis supplied.)
An awareness of general inflation and a constant depreciation and cheapening of money is within the zone of discretion given to the trier of facts when assessing damages. New York Central Railroad Co. v. Johnson (1955), 234 Ind. 457, 127 N.E.2d 603; Hahn v. Moore (1956), 127 Ind. App. 149, 133 N.E.2d 900, 134 N.E.2d 705; Northern Indiana Public Service Co. v. Otis, supra.
In order to justify a reversal on grounds of excessive damages, the amount of damages assessed must appear to be so outrageous as to impress the court as being motivated by passion, prejudice and partiality. New York Central Railroad Co. v. Johnson, supra; Northern Indiana Public Service Co. v. Otis, supra; Hines v. Nichols (1921), 76 Ind. App. 445, 130 N.E. 140; City of Evansville v. Rinehart (1968), 142 Ind. App. 164, 233 N.E.2d 495.
Reversal is not justified, however, if the amount of damages awarded is within the scope of the evidence before the court. Northern Indiana Public Service Co. v. Otis, supra; First Bank & Trust Co. of South Bend v. Tellson (1954), 124 Ind. App. 478, 118 N.E.2d 496.
Referring to the evidence, with all inferences favorable to Daley, we note that the only evidence on the question of damages was produced by Daley and was not contested by the State. Judge Sharp made this discerning statement in Northern Indiana Public Service Co. v. Otis, supra, 145 Ind. App. at 188, 250 N.E.2d at 397:
"The only evidence on the question of damages was produced by the Appellee and neither Appellant offered any evidence in this respect. Thus the Appellee's evidence on damages stands before the court uncontested. City of Indianapolis et al. v. Walker et al., 132 Ind. App. 283, 168 N.E.2d 228 (1961)."
At the time of his death the Deceased was 34 years old and earning approximately $225.00 per week as a professional truck driver. Although employed in several different capacities prior to becoming a truck driver, the tenor of the evidence is that he was happy as a truck driver and intended to permanently remain as such.
The uncontroverted testimony of an expert economist, Professor Roberts, projected that had the Deceased remained in his capacity as a truck driver until retirement his anticipated earnings discounted to present value would have been $59,000 in excess of the $400,000 damages awarded. The jury apparently accepted Professor Roberts' projections as accurate and a fair calculation of the Deceased's expected earnings had he remained alive until retirement age.
*557 In addition to loss of earnings the Deceased's family incurred important intangible losses to which it is difficult to assign pecuniary value. The assessment of damages for loss of intangibles such as love and affection can only be made by the trier of facts utilizing sound and liberal discretion.
There are cases in Indiana and elsewhere in which large monetary damage awards have been held not to be excessive: Northern Indiana Public Service Co. v. Otis, supra ($235,000 for burns to the body); Kavanagh v. Butorac, supra ($100,000 for loss of an eye); Phegley v. Huffman (Ind. App. 1971), 271 N.E.2d 201 ($240,000 for wrongful death); Koninklijke etc. KLM Royal Dutch Airlines v. Tuller (1961), 110 U.S.App.D.C. 282, 292 F.2d 775 ($350,000 for wrongful death); Compania Dominicana de Aviacion v. Knapp (Fla.App. 1971), 251 So.2d 18 ($1,800,000 for wrongful death of two minor sons); Kaspar v. Clinton-Jackson Corp. (Ill. App. 1969), 254 N.E.2d 826 ($400,000 for bodily injury to a 36-year old man); United States v. Cline (9th Cir.1969), 410 F.2d 1337 ($390,000 compensation to wife and children of a wrongful death victim); Young v. Warr (1969), 252 S.C. 179, 165 S.E.2d 797 ($400,000 for permanent paraplegia injury to a 23-year old man); Lebrecht v. Bethlehem Steel Corp. (2d Cir.1968), 402 F.2d 585 ($590,000 to a 28-year old elevator installer earning $350.00 per month); Mickle v. Blackmon (1969), 252 S.C. 202, 166 S.E.2d 173 ($780,000 for paralysis to a 17-year old girl); Frankel v. United States (D.C.Pa. 1970), 321 F. Supp. 1331 ($650,000 for bodily injury to a 19-year old girl); Martin v. Southern Ry. Co. (Tenn. 1971), 463 S.W.2d 690 ($350,000 for bodily injury to a 49-year old retired Navy man); Sloma v. Pfluger (1970), 125 Ill. App.2d 347, 261 N.E.2d 323 ($380,000 for permanent bodily injury).
We are unable to say that the amount of damages awarded is not within the scope of the evidence before the jury or that the verdict is beyond all reasonable limits of the evidence presented or that these damages are so excessive as to be flagrantly outrageous and extravagant or that the jury was motivated by passion or prejudice. The jury verdict is therefore not excessive.
The affirmance of a $400,000 jury verdict against the State of Indiana for wrongful death arising out of the maintenance of its highways is historic in a dual sense.
The amount of this judgment is far in excess of any appeals court approved judgment to date. Some public officials, including the Attorney General[1] have expressed the fear that the State of Indiana will be engulfed by a flood of multimillion-dollar tort claims due to judicial elimination of the ancient doctrine of sovereign freedom from such claims. If it be so, the lapping of the waves will be clearly audible in the General Assembly.
The judgment of the trial court is therefore affirmed.
WHITE and SULLIVAN, JJ., concur.
NOTES
[1] E.g., see Annual Report and Official Opinions 1971 of the Attorney General of Indiana, pages xxiv and xxv.