DAVID ROBERTS *v.* STATE OF INDIANA, GEORGE R. PHEND, RICHARD SCHROEDER, JASON L. HUCKEBY, ERNEST L. BROWN, FALLEN COMBS, WILLIAM H. DENNIS, EDWARD HUCKEBY, CHARLES H. IMEL, ROBERT F. MCHATTON, FLOYD V. LINDLEY, AND RAY C. TINCHER.

[No. 2-1272A135. Filed February 28, 1974.]

*Sheldon H. Cohan*, of Gary, for appellant.

*Theodore L. Sendak*, Attorney General, *Anthony J. Metz*, Deputy Attorney General, for appellees.

## CASE SUMMARY

BUCHANAN, J.—Plaintiff-Appellant David Roberts (Roberts) appeals from a judgment dismissing his Complaint for personal injuries arising out of a riot at the Indiana State Reformatory alleging liability against Defendants-Appellees State of Indiana (State) and certain employees of the Indiana Department of Corrections (Guards and Supervisors), claiming that dismissal of his Complaint on the basis of the doctrine of sovereign immunity was erroneous.

We reverse.

## FACTS

The essential facts and allegations of Roberts' Complaint are:

On September 26, 1969, Roberts, an inmate of the Indiana State Reformatory, was walking in the prison exercise yard at a time when a large group of black inmates (200 or more) had gathered to protest some administrative action of the officials of that institution.

Perceiving the situation, Roberts attempted to leave the area, but was ordered by Defendant-Guards (armed with shotguns) to sit down or lie down on the ground near the protestors. He was not engaged in any unauthorized activity or violation of prison regulations.

Thereafter, in response to orders from the Captain of the Guards (Defendant Jason Huckeby), the Guards fired into the group severely injuring Roberts.

In support of his claim for damages, Roberts charges (1) willful and malicious assault by the Guards, who were known to harbor prejudice against black inmates, and (2) negligence. Among the specific acts of negligence alleged by Roberts are:

1. Authorization by Defendant prison officials for the Guards to fire into the crowd, knowing of their racial prejudice and lack of adequate training while Roberts was in their protective custody;

2. Failure to exercise control or restraint over the inadequately trained Guards at the time of the shooting;

3. Negligence on the part of the Guards in shooting into the crowd.

Roberts prayed for $100,000 in damages.

The State, on behalf of all named Defendants, moved to dismiss the Complaint, claiming that under the doctrine of sovereign immunity Roberts did not state a claim upon which relief could be granted.

The trial court sustained the Motion and entered a judgment dismissing Roberts' Complaint, and he appeals.

## ISSUE

The sole issue is:

Does Roberts' Complaint state a claim or claims for relief from which the State and its employees would not be immune?

Roberts contends that because sovereign immunity has recently been abrogated in this state, his Complaint gave notice of litigable claims against all named Defendants, including the State, and should not, therefore, have been dismissed.

The State admits inroads into the doctrine of sovereign immunity but insists that Roberts' action was precluded because the transaction from which his claim arose involved a *public* or discretionary duty to control inmate disturbances, relying in large part on *Simpson's Food Fair, Inc. v. City of Evansville* (1971), 149 Ind. App. 387, 272 N.E.2d 871. Also, the State contends that the Complaint fails to demonstrate the breach of a privately owed duty.

## DECISION

CONCLUSION—It is our opinion that Roberts' Complaint states legally sufficient claims against the State and should not have been dismissed under any theory of governmental immunity.

Because our decision must rest on the propriety of the trial court's action in sustaining the State's Motion to Dismiss under Rule TR. 12(B)(6), we reiterate the standard by which such dismissals are reviewed on appeal. *Gladis* v. *Melloh* (1971), 149 Ind. App. 466, at 468-69, 273 N.E.2d 767, at 769, summarizes the standard:

"[A] 'complaint *should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'* Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

\* \* \*

"The test is whether in the light most favorable to the plaintiff and with every intendment regarded in his favor, the complaint is sufficient to constitute any valid claims. Knox v. First Sec. Bank of Utah, 196 F.2d 112 (10th Cir. 1952)." (Emphasis supplied.) *See also, Reafsnyder* v. *City of Warsaw* (1973), 155 Ind. App. 455, 293 N.E.2d 540; *Marshall* v. *Russell R. E. Ewin, Inc.* (1972), 152 Ind. App. 171, 282 N.E.2d 841; *Cheathem* v. *City of Evansville* (1972), 151 Ind. App. 181, 278 N.E.2d 602, cert. denied, 410 U.S. 966; *Farm Bureau Insurance Co.* v. *Clinton* (1971), 149 Ind. App. 36, 269 N.E.2d 780.

This standard harmonizes with the concept of notice pleading adopted by our Rules of Trial Procedure. Judge Sullivan emphasized the minimal requirement of a complaint to withstand a TR. 12(B)(6) motion in *McCarthy* v. *McCarthy* (1971), 150 Ind. App. 640, at 645-46, 276 N.E.2d 891, at 895:

"The framers of the new rules went to great pains to circumscribe this practice of paper inundation and have adopted a compact and uncomplicated form of pleading which *requires a plaintiff merely to make a clear and concise statement in order to put the defendant on notice that plaintiff has a justiciable claim and is entitled to relief under some legal theory.* Trial Rule 8(A); Farm Bureau Insurance Co. v. Clinton (1971), [149] Ind. App. [36], 269 N.E.2d 780, 782. *No more is required to withstand a motion to dismiss under Trial Rule 12(B)(6)."* (Emphasis supplied.)

Roberts' Complaint alleges facts supporting both the intentional tort of assault and battery in Paragraph I and the unintentional tort of negligence in Paragraph II, both of which indicate a claim entitling him to relief (if true)—unless his recovery is precluded by the immunity of the State of Indiana and its agents from tort liability.

Recent court decisions in this state have reduced the ancient and awesome fortress of sovereign immunity to ruins. With

limited exceptions, the servants of the state may no longer seek protection within its turrets. *Brinkman* v. *City of Indianapolis* (1967), 141 Ind. App. 662, 231 N.E.2d 169 (*transfer denied*) (tort immunity for cities abolished) ; *Klepinger* v. *Board of Commissioners* (1968), 143 Ind. App. 155, 239 N.E.2d 160 (*transfer denied*) (tort immunity for counties abolished) ; *Perkins* v. *State* (1969), 252 Ind. 549, 251 N.E.2d 30 (tort immunity for State of Indiana eliminated as to proprietary functions) ; *Campbell* v. *State* (1972), 259 Ind. 55, 284 N.E.2d 733 (tort immunity for State of Indiana abolished with reservations) ; *State* v. *Turner* (1972), 153 Ind. App. 197, 286 N.E.2d 697 (followed *Campbell, supra*) ; *State* v. *Daley* (1972), 153 Ind. App. 330, 287 N.E.2d 552 (followed *Campbell, supra*).

The immunity of the state and its officials and agents from tort liability originated in the common law principle that "the King can do no wrong." Now that principle is swept away without regard to fine distinctions as to performance of "government" or "proprietary" functions. The King (state) can "do wrong" within certain boundaries—and those boundaries become important.

Chief Justice Arterburn traced boundaries in the landmark decision of *Campbell* v. *State, supra,* when he said:

> "We do not mean to say by this opinion that all governmental units can be held liable for any and all acts or omissions which might cause damage to persons."

and went on to add:

> "On this subject matter Professor Prosser, in his treatise, stated the following:
>
> > At the very outset it was more or less obvious that some vestige of the governmental immunity must be retained. It was, for example unthinkable that either state [or] a municipality should be held liable for a wrong decision of its courts, for an erroneous evaluation of property by a tax assessor. In several of the decisions abrogating the immunities, there was language used which reserved the possibility that *there might still be immunity as to 'legislative' or 'judicial' functions, or as to acts or omissions*

*of government employees which were 'discretionary.'* Prosser, Law of Torts § 131, at 986 (4th ed. 1971.)

"Therefore, it appears that *in order for one to have standing to recover in a suit against the state there must have been a breach of duty owed to a private individual."* (Emphasis supplied.) 284 N.E.2d, at 737.

If a private duty to a private individual be found to exist, the doctrine of respondeat superior comes into operation and the State, and its various agencies and subdivisions, may be liable for the torts of its employees and agents. *Brinkman, supra,* 141 Ind. App., at 667.

So we proceed to determine if any of the acts and omissions charged by Roberts (negligence and willful assault) can withstand the claim of immunity by the State and its employees.

## Negligence

Analysis of Roberts' Complaint readily discloses that it gives notice of a claim, alleging in substance that the Guards, knowing of his presence near the protestors as an innocent bystander, carelessly fired into the crowd of inmates causing him bodily harm. Further, its allegations amount to a charge of failure on the part of the Guards and Supervisors to adequately assure his safety *while under their control and custody.* These factual assertions support a claim that a special duty was owed to Roberts as a private individual under these circumstances.

In addition to the language quoted above from Campbell, there exists adequate authority in this state to support the proposition that a public official, charged with the custody and care of a prisoner, owes a *private duty* to the prisoner to take reasonable precautions under the circumstances to preserve his life, health, and safety—a duty which is in addition to the duty of safekeeping owed to the public generally. *Ex Parte Jenkins* (1900), 25 Ind. App. 532, 58 N.E. 560; *Magenheimer v. State* (1950), 120 Ind. App. 128, 90 N.E.2d 813; *State ex rel. Tyler v. Gobin* (C.C. Ind. 1899), 94 F. 48; *Brinkman v. City of Indianapolis, supra.*

To the extent that Roberts' allegations relate to the failure to perform this duty, they are sufficient to withstand a claim of immunity.

The State leans heavily on *Simpson's Food Fair, Inc.* v. *City of Evansville, supra,* equating the public duty of the Evansville police to preserve peace and prevent crime with the public duty of the Pendleton prison officials and guards to quell riots and control inmates—but there is an important difference. Roberts' Complaint, unlike the *Simpson* case, alleges facts indicating he was taken into custody and controlled, *i.e.,* a special duty was created to him as a private individual. *Campbell* v. *State, supra; Ex Parte Jenkins, supra; Magenheimer* v. *State, supra; State ex rel. Tyler* v. *Gobin, supra.*

Only a general public duty was found to exist in *Simpson* which carefully distinguished numerous cases involving an undertaking by the state of a special duty to a particular individual—thereby destroying immunity.

Prior to *Campbell,* a line of authority is traceable imposing tort liability on the state if its employees are involved in the performance of a "ministerial" as opposed to a "discretionary" function or act. *See, e.g., Wallace* v. *Feehan* (1934), 206 Ind. 522, 190 N.E. 438; *Adams* v. *Schneider* (1919), 71 Ind. App. 249, 124 N.E. 718; *Snyder* v. *Mouser* (1971), 149 Ind. App. 334, 272 N.E.2d 627.

The only reference in *Campbell* to this discretionary-ministerial distinction is the passage from Dean Prosser's treatise quoted above, in which he states that immunity may exist "as to acts or omissions of government employees which were 'discretionary' " which is followed immediately by language unequivocally stating that "in order for one to have standing to recover in a suit against the state there must have been a breach of duty owed to a private individual."

An extended reading of Prosser's commentary and the case law he cites on this subject reveals his displeasure with this "finespun and more or less unworkable distinction between

acts which are regarded as 'discretionary,' * * * and those which are merely 'ministerial,' * * *." Prosser, *supra* at 988.

Be that as it may, we need not explore the applicability of the discretionary-ministerial dichotomy to this case because we have already determined that the Complaint has stated a claim on which relief could be granted.

*Assault*

Roberts' charge in Paragraph I of his Complaint of willful and intentional assault upon his person by prejudiced Guards also states factual allegations supporting a claim which would, if proved, entitle him to relief.

Indiana courts have long recognized that public employees or officers will be individually liable if, in performing their duties, they act with "corrupt motives" or evil design. *Baker* v. *State* (1867), 27 Ind. 485; *Cooper* v. *McJunkin* (1853), 4 Ind. 290; *Gardner* v. *State* (1853), 4 Ind. 632; *State* v. *Neff* (1877), 58 Ind. 516; *Miller* v. *Griesel* (1973), Ind. App., 297 N.E.2d 463.

In *Bonahoon* v. *State* (1931), 203 Ind. 51, 178 N.E. 570, 79 A.L.R. 453, the Indiana Supreme Court affirmed a criminal conviction of a police officer for assault and battery resulting from excessive physical force visited upon a prisoner. Although cast in a criminal setting, the reasoning for holding public servants culpable is enlightening and persuasive:

> "Police officers are constantly confronted with difficult and trying duties in handling prisoners, many of whom are hardened and resourceful, and the courts will go far in the support of police officers who act in good faith in a legitimate effort to protect society. *They may exercise reasonable means for the safe keeping of prisoners, to preserve discipline and to secure obedience to reasonable orders. * * * [However,] cruel and brutal methods should never be tolerated. * * *
>
> "The law protects persons charged with crime from ill or unjust treatment at all times.* Only reasonable and necessary force may be used in making an arrest, §§ 2157, 2159 Burns 1926; *Durham* v. *State* (1927), 199 Ind. 567, 159 N.E. 145; *Plummer* v. *State* (1893), 135 Ind. 308, 34 N.E.

968; 'no person arrested, or confined in jail, shall be treated with unnecessary rigor,' § 15, Art. 1, Constitution, § 67 Burns 1926; *Hall* v. *State* (1928), 199 Ind. 592, 600, 159 N.E. 420; and the restraint exercised over a prisoner in the courtroom can only be such as is necessary, in the exercise of the court's sound and enlightened discretion, to prevent his escape or the harming of others. *McPherson* v. *State* (1912), 178 Ind. 583, 99 N.E. 984; *Hall* v. *State, supra.* *'While the law protects the police officer in the proper discharge of his duties, it must at the same time just as effectively protect the individual from the abuse of the police.'* *United States* v. *Pabalan* (1917), 37 Philippine 352, 354." (Emphasis supplied.) 203 Ind., at 55-56, 178 N.E., at 571.

In his Complaint, Roberts alleges that the Guards committed an assault upon him while acting within the scope of their employment. A legally sufficient claim is therefore made against the State in its capacity as master . . . respondeat superior. In the wake of *Campbell,* there can be no other conclusion under the circumstances alleged by Roberts.

In sum, citizens of this state unavoidably exposed as they must be to dangers and abuses of power arising out of the multifunctions of state and local government, are entitled to relief from the rigors of an ancient judicial doctrine of a bygone era. This is so at least to the extent government officials and employees, acting within the scope of their employment, intentionally or negligently breach a duty owed to a private individual.

In recognition of this exposure of individual members of the public, and of the legitimate interest of the public collectively, to limit and define the state's tort liability, the legislature has recently enacted legislation[1] setting forth the specific areas in which the state will not be liable in tort to its citizens. Thus a legislative standard now exists for future reference.

While Roberts has alleged facts in his Complaint stating a claim or claims placing him beyond the scope of the largely

1. House Enrolled Act No. 1068 (effective February 19, 1974), IC 1971, § 34-4-16.5 et seq. (as amended).

eviscerated doctrine of sovereign immunity, we emphasize that he has yet to *prove* those facts to be entitled to recovery.

The judgment of the trial court dismissing Roberts' Complaint is reversed and the case remanded for further proceedings consistent with this decision.

Sullivan, P.J. and White, J., concur.

NOTE.—Reported at 307 N.E.2d 501.