## STATE OF INDIANA, EX REL. WALBURN, *v.* GOUGH ET AL.

[No. 8,176. Filed December 10, 1913.]

1. DRAINS. — *Establishment.* — *Negligence of Commissioners.* — *Actions.*—Under the drainage act of 1905, Acts 1905 p. 456, providing that after certain preliminary steps the court shall refer the proceeding back to the drainage commissioners to proceed with the work and make final report, and that they shall determine definitely the best and cheapest method of drainage, the route, location and character of the proposed work, and fix the same by metes and bounds, etc., and requiring them to assess the benefits and damages, the drainage commissioners, in determining such matters, are required to exercise discretion and judgment, and, even though not strictly judges, are within the provisions of the law exempting one from liability for misconduct or delinquency in the discharge of a judicial duty, and hence the commissioners in charge of a drainage construction were not liable for their alleged failure to exercise proper care and skill in planning the

drain which, because of its grade, was worthless to plaintiff whose lands had been assessed therefor.   p. 121.

From Delaware Superior Court; *Robert M. VanAtta,* Judge.

Action by the State of Indiana, on the relation of Lawrence Walburn, against Charles Gough and others.   From a judgment for defendants, the relator appeals.   *Affirmed.*

*Elmer E. Botkin* and *Silverburg, Bracken & Gray,* for appellant.

*William W. Orr, Harry H. Orr* and *Leonidas A. Guthrie,* for appellees.

LAIRY, C. J.—Appellant brought this action against appellees in the Superior Court of Delaware County.   The trial court held the complaint to be insufficient and appellant, refusing to amend or plead over, judgment was rendered against him for costs.   The only question presented on appeal is the sufficiency of the complaint.   From the allegations of the complaint, it appears that appellant was the owner of certain lands in Delaware County which were in need of drainage and that in February, 1906, he and other persons filed with the board of commissioners of that county a petition for the location, establishment and construction of a ditch under and pursuant to Acts 1905 p. 456.   Appellee, Gough, was at the time, the county surveyor of Delaware County, and *ex officio* drainage commissioner, and appellees, Drumm, Fimple and Watson, were sureties on his official bond.   Appellee, Applegate, was at the time drainage commissioner of such county and appellees, Downing, Nash and Adams, were the sureties on his official bond.

The complaint sets out in detail the proceedings before the board of commissioners of Delaware County showing that on June 4, 1906, the petition was referred to appellees, Gough and Applegate, as drainage commissioners in accordance with the provisions of §3 of the act of 1905, *supra,* and that on May 1, 1906, they filed with the board their prelimi-

nary report in accordance with the provisions of that sec-
tion; that no exceptions were filed to the preliminary report
and that, after the expiration of twenty days, the board of
commissioners referred the petition back to the same drain-
age commissioners with directions to prepare and file their
final report; that on August 2 of that year, the commission-
ers filed their final report in accordance with §4 of the act
cited and no remonstrance, objections, or exceptions were
filed to such final report. As the complaint further shows,
the board of commissioners of Delaware County made an
order approving the report made by the drainage commis-
sioners and confirming the assessments therein contained,
and ordered that the proposed ditch be established and con-
structed in accordance with the specifications contained in
the report. The work of drainage was referred to appellee
Gough as county surveyor and drainage commissioner for
construction and he afterwards collected the assessments and
completed the work in accordance with the plans, specifica-
tions, grades and bench marks as set forth in said report.
An assessment of $143 was made against the lands of relator
described in the complaint which assessment was paid. The
lands of relator which are assessed with benefits are not
reached by the ditch so constructed but the source of tribu-
tary No. 2 is within 900 feet of such lands. The bottom of
said tributary at its source is on a level with the surface
of the lands of relator and the tributary is not of sufficient
depth to afford any outlet for drainage from such land. If
proper care and skill had been exercised by the drainage
commissioners in planning such ditch, so as to carry the fall
of tributary No. 2 up from the main ditch, this tributary
could have been planned and constructed of a sufficient
depth to afford an ample outlet for relator's land. The
complaint alleges that Charles Gough as surveyor in deter-
mining the depth of tributary No. 2 of such ditch took his
levels, and made his surveys, observations and calculations
in a careless, negligent and unskillful manner, and that

he failed to take levels upon the lands of relator in order to determine the depth of a ditch which would be sufficient to properly drain the same, and that, in total disregard of his duties, he located the bottom of tributary No. 2 at a depth of three and one-half to four feet below the surface of the ground, whereas it could have been located at a depth of six feet below the surface and it should have been so located in order to furnish an outlet for draining the lands of relator. It is further alleged that the lands of relator lie in such a position that it is impossible to drain them by any other means except by a drain located along the line of tributary No. 2, and that in order to accomplish such drainage, it will be necessary to reconstruct such tributary for a length of 2,200 feet and that the cost of such work will be $500. Relator further alleges that he was not skilled in the art of engineering or surveying and that it was impossible for one not so skilled to determine from the report that the ditch planned and specified therein was not of sufficient depth to furnish an outlet for draining his land; that he believed that the surveyor and drainage commissioner had carefully and skillfully planned such ditch of a sufficient depth to properly drain his land and that he relied on this belief and had no knowledge to the contrary until more than one year after such ditch had been completed.

We are called upon to determine the sufficiency of the facts stated in the complaint to constitute a cause of action against the surveyor or the drainage commissioner, 1. and this involves the question as to whether these officers can be held liable for negligence, lack of skill, or the failure to exercise proper judgment in planning a proposed ditch and preparing plans and specifications therefor when acting under an order of court by which such questions were referred to them for their determination in a proceeding for the establishment and construction of a ditch under the provisions of the statute referred to in the complaint. This statute provides that, after certain prelimi-

nary steps have been taken, the court shall refer the pro-
ceedings back to the drainage commissioners with direction
that they proceed with the work and make their final report.
The statute also provides that these commissioners shall
determine definitely the best and cheapest method of drain-
age, the route, location and character of the proposed work,
and fix the same by metes and bounds, courses, distances
and descriptions, grades and bench marks, including all
necessary arms or branches so as to provide for complete
drainage of all the lands to be affected by the proposed
work. They are also required to assess the benefits and
damages to the tracts and parcels of land affected by the
proposed improvement and to make a report under oath,
to the court. The statute also provides for remonstrance
against this report by any person interested and for a hear-
ing and determination of the questions raised by such re-
monstrances. When the report is finally approved, the
plans and specifications for the proposed work embodied
therein are adopted by the court. The statute evidently
contemplates that the court before which the proceeding is
pending shall adopt proper plans and specifications for the
proposed work before it orders the same to be established.
As a means to this end, it is provided that certain questions
shall be submitted by the court for determination by the
drainage commissioners and among the questions so sub-
mitted and upon which they are required to report is the
character of the ditch which will accomplish the proposed
drainage in the best and cheapest manner, together with
the plans and grades for its construction.

In determining the questions thus submitted to them, the
drainage commissioners act in much the same capacity as
commissioners appointed by a court to make partition of
lands, or as commissioners appointed to assess damages in
a proceeding for the appropriation of real estate. The
determination of the questions submitted to such officers
requires the exercise of discretion and judgment. It is well

settled that no action lies for misconduct or delinquency in the discharge of a judicial duty; and, even though the officer may not in strictness be a judge, still if his duties are such as to require of him the exercise of his judgment or discretion in determining the manner of their performance, he is exempt from responsibility for a mistake in judgment or for an improper exercise of discretion. *McOsker* v. *Burrell* (1876), 55 Ind. 425; *Baker* v. *State* (1867), 27 Ind. 485; *Waldron* v. *Berry* (1871), 51 N. H. 136; *Bates* v. *Horner* (1893), 65 Vt. 471, 27 Atl. 134, 22 L. R. A. 824, and notes thereto; *Schooler* v. *Arrington* (1904), 106 Mo. App. 607, 81 S. W. 468; 5 Thompson, Negligence §6385. "The king can do no wrong," is an ancient and well-known maxim. The sovereign power, which in monarchies was vested in the king, is widely distributed in a government such as ours. Many officers within their respective spheres wield a part of the sovereign power and in so far as they act in the exercise of such power, they are immune from civil responsibility. Any injury which may result to a private individual is *damnum absque injuria*.

Where official duties are purely ministerial, and involve the exercise of a certain definite task leaving no room for the exercise of judgment in determining the manner of its performance, a different rule of liability applies. It has accordingly been held that where a court established a ditch and ordered it constructed according to certain plans and specifications, the commissioner to whom it was referred for construction was liable in damages for a failure to have it constructed in accordance with such plans and specifications. *Smith* v. *State, ex rel.* (1888), 117 Ind. 167, 19 N. E. 744. Under the facts in this case, the court in proceeding to establish the ditch in question was exercising a portion of the sovereign power of the State and so also were the commissioners of drainage while acting under the authority of the court in determining and reporting the best and cheapest method of drainage. They were required only to discharge

their duties according to the best of their ability, and, for a mistake of judgment, they cannot be held liable. The judgment of the trial court is correct. Judgment affirmed.

NOTE.—Reported in 103 N. E. 448. See, also, 14 Cyc. 1051, 1057.