297 N.E.2d 463 (1973)
William MILLER, b/n/f Kathlyn Miller, Appellant (Plaintiff below),
v.
Dale H. GRIESEL et al., Appellees (Defendants below).
No. 572A249.
Court of Appeals of Indiana, Third District.
June 19, 1973.
Rehearing Denied July 26, 1973.
*465 Thomas H. Singer, Lysohir & Singer, South Bend, John S. Diaz, Diaz & Moore, Portage, for appellant.
Patrick J. Dougherty, Valparaiso, Spangler, Jennings, Spangler & Dougherty, Gary, for appellees Dale H. Griesel and Velma J. Hall.
Winfield L. Houran, William F. Satterlee, III, John E. Hughes, Chester, Clifford, Hoeppner & Houran, Valparaiso, for appellee School City of East Gary.
STATON, Judge.

I.

STATEMENT ON THE APPEAL
Fifth grade students at the Virgil I. Bailey School in East Gary, Indiana had just finished lunch. Recess followed from 11:50 o'clock A.M. to 12:20 o'clock P.M. Approximately ten of the fifth grade students had decided to stay inside their classroom during the recess period. After making arrangements with the teacher in the adjoining classroom to occasionally look in on the ten remaining students, the fifth grade teacher left the classroom. During the teacher's absence, William Miller went to the desk of a fellow student so that he could investigate the contents of a box which resembled a fishing tackle box. Guy Wedge's fishing tackle box contained a detonator cap and batteries. William Miller thought the detonator cap was a Christmas light so he touched the cap to the batteries. The cap exploded and permanently damaged his left eye.
William Miller, by next friend, brought an action for damages against the teacher, Velma J. Hall, the principal, Dale H. Griesel and the School City of East Gary. After William Miller had presented his evidence to the jury, the teacher, principal and School City of East Gary moved for a judgment on the evidence under Rule TR. 50, IC 1971, 34-5-1-1, of the Indiana Rules of Civil Procedure. This motion was granted by the trial court, and William Miller filed his motion to correct errors which presents these issues on appeal:
1. Did the trial court err when it sustained the motion for judgment on the evidence under Rule Tr. 50?
2. Did the trial court abuse its discretion when it refused to order Dale Griesel and Velma Hall to answer certain discovery questions during the taking of their depositions?
3. Did the trial court commit reversible error when it refused to permit William Miller's counsel to "... cross-examine the Defendant, Dale Griesel, as an expert witness by using an authoritative treatise... ."?
4. Did the trial court commit reversible error when it sustained objections to *466 cross-examination questions asked by William Miller's counsel?
Our opinion concludes that the trial court did not err when it sustained the motion for judgment on the evidence and that there was no abuse of discretion by the trial court when it sustained the objections to the questions asked by William Miller's counsel. Our opinion affirms the judgment of the trial court.

II.

STATEMENT OF THE FACTS
William Miller had brought his lunch to school. He had been directed by his teacher to work on a salt relief map during the recess period. There were approximately ten other fifth grade students who remained in the classroom during the recess period to work on their salt relief maps. Velma J. Hall, his teacher, made arrangements with the teacher in the adjoining classroom to look in on her students while she was gone during the recess period. The school had a rule which permitted the teacher to leave those members of her class who chose to remain in the classroom during the recess period if she made provisions for adequate supervision during her absence from the classroom. This rule permitted the teacher to be free from her supervisory duties during the recess period which was from 11:50 o'clock A.M. to 12:20 o'clock P.M.[1]
While the teacher was gone during the half hour recess period, William Miller went over to the desk of Guy Wedge so that he could inspect a box which resembled a fishing tackle box. He had contemplated trading some pencils for the box. When he looked inside the box, he saw a detonator cap which he assumed was a Christmas light. He touched the detonator cap to some batteries in the box. The detonator cap exploded and caused permanent damage to his left eye.
William Miller brought an action for damages against his fifth grade teacher, Velma J. Hall, the principal of the school, Dale H. Griesel, and the School City of East Gary. After submitting his evidence to the jury, the teacher, principal and School City of East Gary moved for a judgment on the evidence under Rule TR. 50 of the Indiana Rules of Civil Procedure. The trial court granted the motion. William Miller filed his motion to correct errors which was overruled. The issues and underlying questions presented by the overruling of William Miller's motion to correct errors are discussed below.

III.

STATEMENT OF THE ISSUES
Four issues will be discussed in this opinion. These issues are:
1. Did the trial court err when it sustained the motion for judgment on the evidence under Rule TR. 50?
2. Did the trial court abuse its discretion when it refused to order Dale Griesel and Velma Hall to answer certain discovery questions during the taking of their depositions?
3. Did the trial court commit reversible error when it refused to permit William Miller's counsel to "... cross-examine the Defendant, Dale Griesel, as an expert witness by using an authoritative treatise... ."?
4. Did the trial court commit reversible error when it sustained objections to cross-examination questions asked by William Miller's counsel?
Our discussion of the first issue will examine the scope of a Rule TR. 50 motion for judgment on the evidence and then, the application of the rule to the evidence by the trial court. The second, third and fourth issues will be discussed separately. *467 They will be designated as "Issue Two," "Issue Three" and "Issue Four" in our Statement on the Law section for the convenience of those who are reading this opinion on only one of the four issues discussed.

IV.

STATEMENT ON THE LAW
SCOPE OF RULE TR. 50: The motion for judgment on the evidence was made by the Defendants, Velma J. Hall, Dale H. Griesel and the School City of East Gary at the close of William Miller's evidence in support of his claim. When a Rule TR. 50 motion is made at this stage of the trial, the trial court must consider whether the evidence submitted by William Miller is sufficient to support a verdict if the evidence were submitted to the jury and a verdict returned in his favor. The trial court finds itself one verdict and one motion to correct errors removed from the same test that it is required to make under Rule TR. 59(E)(7), which provides:
"In reviewing the evidence, the court ... shall enter judgment, subject to the provisions herein, if the court determines that the verdict of a nonadvisory jury is ... not supported by the evidence, ..."[2]
We would be remiss in discussing the scope of Rule TR. 50 if we did not mention Rule TR. 41(B), which is on the periphery even though it applies only to actions tried by a court without a jury. TR. 41(B) and TR. 50 actually run parallel to one another. TR. 50 applies to jury trials and TR. 41(B) applies to court trials. However, their scope and purpose are identical: to reject from the judicial process those claims that are entirely without merit and to prevent such unmeritorious claims from overburdening the judicial system. The test to be applied in one should not be confused or intermingled with the other. They are different. Basically, the trial court determines the sufficiency of the evidence in Rule TR. 50 motions while the trial court determines the facts in a TR. 41(B) motion. The tenor of the language in TR. 41(B) is in part as follows:
"(B) Involuntary dismissal: Effect thereof. After the plaintiff or party with the burden of proof upon an issue, in an action tried by the court without a jury, has completed the presentation of his evidence thereon, the opposing party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that considering all the evidence and reasonable inferences therefrom in favor of the party to whom the motion is directed, to be true, there is no substantial evidence of probative value to sustain the material allegations of the party against whom the motion is directed. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence... ."
The distinction between Rule TR. 50 and Rule TR. 41(B) alluded to above is explained in greater detail in Harvey, 3 Indiana Practice § 50.4 at 371:
"... [A] distinction arises in the court's approach to the evidence on the motion to dismiss under Trial Rule 41, and a motion for judgment on the evidence. Rule 41(B) states that after plaintiff has presented his evidence, and the motion is made, the court may then determine the facts and render judgment, and if this is done the court shall make findings as provided for in Trial Rule 52(A).

*468 "Under Rule 50 the court does not find facts but determines whether the evidence is sufficient to sustain a verdict for the non-moving party, and if so then the motion is denied, and if not then the court renders judgment on the evidence or judgment thereon notwithstanding the verdict."
In summary, the scope of a Rule TR. 50 motion for judgment on the evidence approaches the same purpose and applies the same test as Rule TR. 59(E) after a verdict has been rendered and a motion to correct errors has been filed. TR. 41(B) has the same purpose but a different test. TR. 41(B) is only applicable to court trials when there is no jury verdict to consider. The application of Rule TR. 50 is only in jury trials under the six (6) specific instances set forth in the rule. The present case concerns only Rule TR. 50(A)(1) which is as follows:
"(A) Judgment on the evidence  How raised  Effect. Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict. A party may move for such judgment on the evidence:
(1) after another party carrying the burden of proof or of going forward with the evidence upon any one or more issues has completed presentation of his evidence thereon; ..." (Our emphasis).
APPLICATION OF RULE TR. 50(A)(1): Questions of law should be determined first by the trial court where such questions must be established by the evidence to support a verdict upon factual issues.[3]
There are two questions which should be decided first by the trial court.[4] These questions of law are:
1. Reasonableness of the rule, and
2. Whether the action taken by the teacher, Velma Hall, was ministerial or discretionary.
Reasonableness of the Rule: The reasonableness of a school regulation or rule is a question of law to be determined by the trial court. Fertich v. Michener (1887), 111 Ind. 472, 11 N.E. 605; The State v. Vanderbilt (1888), 116 Ind. 11, 18 N.E. 266; and School City of Evansville v. *469 Culver (1932), 94 Ind. App. 692, 182 N.E. 270.
The rule was formulated by the Principal, Dale H. Griesel, as the "... responsible head and professional leader of the school..." under § 2.33(1) of the "School Board and Administrative Manual of School City of East Gary."[5] This rule permitted a teacher to reduce the degree of supervision from her total physical presence in the classroom during the recess period to something less than her total physical presence depending upon her assessment of the existing circumstances and judgment. This rule was oral and was explained by the Principal, Dale H. Griesel when he testified as follows:
"From 10 minutes until 12:00 until 20 minutes after 12:00, the open recess period, the bulk of these students again were outside in a supervised play area.
"On some occasions, there were students for any number of reasons who were staying in during this supervised block time of recess outside, and for this reason, and as I have said that was depending on the circumstances, the supervision, or the duty of responsibility would be again dependent on what was happening within that room, who was in that room, whether anybody was in that room, and many times there weren't children in the room.
* * * * * *
"Q. Why did you decide a teacher didn't have to be there necessarily when there were students there during the recess period?
"A. Usually because there was a great deal less. There were a great deal fewer students remaining in the room during that time.
* * * * * *
"Q. And the rule was that the teacher would be in the room while they were eating lunch, and after that then they went outside for a general recess, then if the teacher did not wish to remain there that long, she would have somebody to look in on them, and that she could be free for this period of time that she needed, is that right?
"A. Yes."
There is no evidence showing that the policy or rule formulated by the principal was itself unreasonable.[6] There is ample evidence in the record from which the trial court could have found that the rule was reasonable. Therefore, this determination of the trial court is supported by the evidence. It is the nature of the teacher's action which is the determinative question of law.
The second question of law which must be determined by the trial court is whether Velma Hall's action as the teacher of the class was ministerial or discretionary in nature. In Adams v. Schneider (1919), 71 Ind. App. 249, 255-256, 124 N.E. 718, 720, our court defined the distinction between discretionary and ministerial acts as follows:
"... A duty is discretionary when it involves on the part of the officer to determine whether or not he should perform a certain act, and if so in what particular way, and in the absence of corrupt motives, in the exercise of such discretion, he is not liable. His duties, however, in the performance of the act, after he has once determined that it shall be done, are ministerial, and for negligence in such performance, which results in injury, he may be liable in damages."
Dale H. Griesel, the Principal, testified that on some occasions there were students who chose to stay in the classroom during *470 the half-hour noon recess rather than to go outside with the bulk of the students. He further testified that "... many times there weren't children in the room." Velma Hall, the teacher, had to consider what degree of supervision to apply, if any, by first taking into account the number of students staying in during the recess period. Velma Hall faced these circumstances prior to leaving her classroom: Ten (10) children had chosen to remain in the classroom during the half-hour recess period after lunch. The evidence shows that she had no knowledge or reason to believe that there was any dangerous, non-school property in the classroom. There was no evidence that any of the ten (10) children in the classroom presented any special behaviorial problems which would require other than routine supervision. The children were assigned a flour-salt map project activity which was in connection with their present studies. A teacher in the adjoining classroom agreed to check on the class during the half-hour period. These factual circumstances were before the trial court when it made the determination that Velma Hall's decision to leave her class under the aforementioned rule and the above existing circumstances was a discretionary act. A teacher is a professional. She is a college trained employee of a governmental unit, and her training continues throughout her tenure. Many of her duties require the exercise of judgment and discretion while teaching her students. In the present case Velma Hall followed precisely the rule promulgated by the Principal. There is no evidence of a corrupt motive or indifference to responsibility in the light of the circumstances. In State ex rel. Walburn v. Gough (1913), 55 Ind. App. 118, 122-123, 103 N.E. 448, 449-450, this court held that:
"... It is well settled that no action lies for misconduct or delinquency in the discharge of a judicial duty; and, even though the officer may not in strictness be a judge, still if his duties are such as to require of him the exercise of his judgment or discretion in determining the manner of their performance, he is exempt from responsibility for a mistake in judgment or for an improper exercise of discretion... .
"Where official duties are purely ministerial, and involve the exercise of a certain definite task leaving no room for the exercise of judgment in determining the manner of its performance, a different rule of liability applies... ."
Also see Pierson v. Ray (1967), 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288; Tenney v. Brandhove (1951), 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019; Snyder v. Mouser, supra; Adams v. Schneider, supra; and Fertich v. Michener, supra.
The Supreme Court of Indiana, while speaking of discretionary immunity by governmental units and their employees in an opinion written by Chief Justice Arterburn, stated in Campbell v. State (1972), Ind., 284 N.E.2d 733, 737:
"We do not mean to say by this opinion that all governmental units can be held liable for any and all acts or omissions which might cause damage to persons. For example, one may not claim a recovery because a city or state failed to provide adequate police protection to prevent crime. Simpson's Food Fair, Inc. v. City of Evansville (1971), Ind. App., 272 N.E.2d 871, Transfer denied. Nor may one recover damages because a state official made an appointment of an individual whose incompetent performance gives rise to a suit alleging negligence on the part of the state official for making such an appointment. Likewise the United States Supreme Court has recognized a judicial immunity. Pierson v. Ray (1967) 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288. On this subject matter Professor Prosser, in his treatise, stated the following:
`At the very outset it was more or less obvious that some vestige of the governmental immunity must be retained. *471 It was, for example unthinkable that either state [or] a municipality should be held liable for a wrong decision of its courts, for an erroneous evaluation of property by a tax assessor. In several of the decisions abrogating the immunities, there was language used which reserved the possibility that there might still be immunity as to "legislative" or "judicial" functions, or as to acts or omissions of government employees which were "discretionary."' Prosser, Law of Torts § 131, at 986 (4th ed. 1971).
"Therefore, it appears that in order for one to have standing to recover in a suit against the state there must have been a breach of duty owed to a private individual."[7]
No liability could attach to the Defendants once the trial court determined as a matter of law that a reasonable rule had been promulgated and that the teacher's action in leaving the classroom during the half-hour recess period was discretionary. Therefore, the trial court's ruling which sustained the Defendants' motion for judgment on the evidence under Rule TR. 50 should be affirmed.[8]
ISSUE TWO: William Miller asked eleven questions of Dale H. Griesel and seven questions of Velma J. Hall during the taking of their depositions. They were instructed not to answer by their counsel. These questions were certified to the trial court as provided under Rule TR. 37(A) of the Indiana Rules of Procedure. The trial court refused to order Dale H. Griesel and Velma J. Hall to answer the questions. Miller contends that the questions were proper under Rule TR. 30(C) of the Indiana Rules of Procedure which permits him to question an adverse party pursuant to Rule TR. 43(B) of the Indiana Rules of Procedure and that the trial court committed reversible error by refusing to order Dale H. Griesel and Velma J. Hall to answer the questions.
Rule TR. 43(B) reads as follows:
"(B) Scope of examination and cross-examination. A party may interrogate any unwilling or hostile witness by leading questions. A party may call an adverse party or an officer, director, managing agent or executive officer, or other person duly authorized and consenting to testify on its behalf, of a public or private corporation or of a partnership or association which is an adverse party, and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party, and the witness thus called may be contradicted and impeached by or on behalf of the adverse party also, and may be cross-examined by the adverse party only upon the subject matter of his examination in chief."
A witness must be named as an adverse party to the suit to qualify as an adverse party[9] under the rule or come within one of the classifications set forth in the second line of Rule TR. 43(B). These classifications are:
1. Officer

*472 2. Director
3. Managing Agent
4. Executive Officer[10]
5. A person duly authorized and consenting to testify on behalf of a public or private corporation or of a partnership or association, which is an adverse party.
If the witness under examination comes within one of the five classifications above or is an adverse party, the party interrogating the witnesss may: "... interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party, ... ." Both witnesses, Dale H. Griesel and Velma J. Hall, were parties to the action. The trial court clearly committed error by failing to order both witnesses to answer the questions which were certified to it. Having found error in the proceedings, our next question is whether the complaining party, William Miller, was prejudiced or harmed by the court's error.
Miller contends that he was prejudiced because he was prevented from asking questions which would have established Dale H. Griesel and Velma J. Hall's liability or would have led to discovery of other relevant evidence. We have carefully read each of the depositions of Dale H. Griesel and Velma J. Hall.[11] We find that the substance of the questions asked Dale H. Griesel and Velma J. Hall was answered in other portions of their depositions.[12] There is no showing that William Miller was in any way prejudiced by the trial court's error; therefore, such error is not reversible. Turner v. State (1972), Ind., 287 N.E.2d 339.
ISSUE THREE: William Miller contends that the trial court committed reversible error when it did not permit him to "... cross-examine the defendant, Dale Griesel, as an expert witness by using an authoritative treatise... ." The exchange between Miller's Counsel, Mr. Singer, Defense Counsel, Mr. Dougherty, and the court is as follows:
"Q. Mr. Griesel, are you aware of a book called An Educator's Encyclopedia?

"A. I am aware of it.
"Q. Didn't you ever read and study from that book when you were in graduate school?
"Mr. Dougherty: Your Honor, I again would object to that line of questioning. I don't think it has any relevancy. I call your attention to several cases, I don't think the background or training or whatever has anything to do with the issue in this lawsuit. I think the only issue is whether or not there was a rule, and if there was a rule, whether it was adequately implemented. That is all we are charged with.
* * * * * *
"The Court: Well, I think in this particular area I am going to sustain the objection to any such inquiry of this witness.
"Mr. Singer: I take it then I am not permitted either to cross examine him as an expert with authoritative text or either as a party being called on cross examination.
"The Court: I am not sure what you mean by the latter.

*473 "I think you can examine him now to go to pertinent questions, but to examine him as an expert would be in this particular area, would with this fact situation we are in and this particular situation with this witness here would be nothing more than time consuming and give this jury nothing more to go on.
"Evidently these positions, these rules were made and they were followed."
When an attempt to use learned treatises as evidence is made, Indiana adheres to the majority view that such learned treatises are not admissible as independent evidence. Epps v. The State (1885), 102 Ind. 539, 549-550, 1 N.E. 491; Shover v. Myrick (1892), 4 Ind. App. 7, 16, 30 N.E. 207; Kavanagh v. Butorac (1966), 140 Ind. App. 139, 154, 221 N.E.2d 824 and 84 A.L.R.2d 1338, 1342. However, it is recognized in Indiana that it is proper cross-examination, in order to test the learning of a witness who testifies as an expert, to refer to books of approved authority upon the subjects under investigation. Hess v. Lowrey (1890), 122 Ind. 225, 233, 23 N.E. 156; Reddick v. Young (1912), 177 Ind. 632, 639, 98 N.E. 318 and 60 A.L.R.2d 77.
William Miller contends that he had a right to cross-examine Dale H. Griesel "as an expert witness." This contention necessarily assumes from the outset that the trial court considered Dale H. Griesel qualified as an expert witness. The record shows that the trial court did not consider Dale H. Griesel qualified as an expert. On page 93 of the transcript, the following comment was made by William Miller's Counsel, Mr. Singer, after the question to Dale H. Griesel:
"MR. SINGER: It seems to me, your Honor, that Mr. Griesel has established, at least sufficiently so the jury can consider his opinion, that he is an expert witness... ."
A lengthy discussion on the merits of the objection took place, and then the trial court stated:
"THE COURT: (Interposing) I think you can examine him now to go to pertinent questions, but to examine him as an expert would in this particular area, would with this fact situation we are in, and this particular situation with this witness here, would be nothing more than time consuming and give this jury nothing more to go on.
"Evidently these positions, these rules were made, and they were followed.
"Sustain the objection."
Dale H. Griesel was not qualified as an expert witness. It is for the court to determine whether or not a witness is qualified to testify as an expert, and the question of the expert witness's competency is exclusively for the determination of the trial court. Its determination upon the qualifications of a given witness as an expert will not be reversed unless there is an abuse of discretion. City of Fort Wayne v. Coombs (1886), 107 Ind. 75, 84-85, 7 N.E. 743; Dougherty v. State (1934), 206 Ind. 678, 686, 191 N.E. 84; Chicago & Erie Railroad Company v. Monesmith (1941), 110 Ind. App. 281, 288, 37 N.E.2d 724; Tyler v. State (1968), 250 Ind. 419, 424, 236 N.E.2d 815; and Patterson v. State (1970), 255 Ind. 22, 25-26, 262 N.E.2d 520.
The trial court did not abuse its discretion when it sustained the objection to Mr. Singer's question. Dale H. Griesel had not been qualified as an expert by the trial court at the time of the ruling. We find no error.
ISSUE FOUR: William Miller's final contention of error is that he should have been permitted to ask certain questions of Velma J. Hall. The questions *474 asked, objected to and the rulings made thereon are as follows:
"Q. I take it it was your opinion you could rely on their own self discipline to carry out such a rule?
"A. Yes, sir.
"Mr. Dougherty: That is an assumption on his part, there is no evidence in the record  as a matter of fact she made arrangements for somebody else to look in on them in accordance with the rules and regulations in the policy set down by the school, and I think the question is unfair to this witness and it is an assumption on the part of the question without any basis whatsoever.
"Mr. Singer: It's cross examination, Your Honor.
"The Court: Sustain the objection to that question.
"Q. Well, I take it you didn't feel you needed to be in the room.
"Mr. Dougherty: Well, just a minute, that is not a question at all. We object to the question, your Honor, there is evidence in this record that Mrs. Hall made arrangements in accordance with the rules and regulations that were in effect at Virgil I. Bailey School, and it is an assumption that he is taking, that is not a proper question to this witness.
"The Court: Sustained.
* * * * * *
"Q. All right, but you didn't feel it was necessary for a teacher to be in the room?
"Mr. Dougherty: Now, just a minute, what she felt was necessary or unnecessary is not at issue in this case. That question again presupposes a set of facts that Mr. Singer is attempting to foist on this witness. The evidence is she did what was required of her insofar as having Mr. Schuck or some other teacher look in on her children. She was following the rules and regulations that the School City laid down, which they had a right to do, and whether or not she felt it was necessary or not is not at issue in this case.
"The Court: Sustain the objection."
The objection to the questions was that they were irrelevant to the issues before the court. The first question: "I take it it was your opinion you could rely on their own self discipline to carry out such a rule?" was answered, "Yes, sir."[13] Certainly the other questions were repetitious at best. There is no showing that the answers to these questions would have in any way established any fact or response other than that which had already been given to the previous question. There is no showing of harm or prejudice. The trial court's ruling upon the objection did not constitute reversible error. The scope of the examination of a witness is within the sound discretion of the trial court. Brooks v. State (1973), Ind., 291 N.E.2d 559. We will affirm the action of the trial court if it is sustainable upon any theory. Ross v. Review Board (1962), 243 Ind. 61, 182 N.E.2d 585; State ex rel. Tittle v. Covington Community Schools (1951), 229 Ind. 208, 96 N.E.2d 334.

V.

DECISION OF THE COURT
The trial court's sustaining of the motion for judgment on the evidence under *475 Rule TR. 50 of the Indiana Rules of Procedure was not error. Velma J. Hall was implementing a reasonable rule that had been promulgated by proper school authorities. The action taken by her was discretionary. No liability attaches to discretionary acts. Therefore, the motion for judgment on the evidence should have been sustained.
ISSUE TWO: The trial court should have ordered Dale H. Griesel and Velma J. Hall to answer the questions certified by Miller's counsel. This was error; however, our examination of the record failed to disclose prejudice or harm resulting from the trial court's error. Therefore, the error is harmless and not reversible error.
ISSUE THREE: Dale H. Griesel had not been qualified as an expert witness by the trial court. It is for the trial court to determine whether or not a witness is qualified to testify as an expert, and the question of the expert witness' competency is exclusively reserved for the determination of the trial court. The record clearly demonstrates that the trial court did not consider Dale H. Griesel qualified as an expert witness at the time it sustained the objection to the question; therefore, the trial court did not commit error.
ISSUE FOUR: Miller's counsel had his answer to the question prior to the sustaining of the objection. The scope of the examination was within the sound discretion of the trial court. No abuse of discretion is shown; therefore, the trial court did not commit reversible error when it sustained the objection to the repetitious question.
The judgment of the trial court should be and the same hereby is affirmed.
HOFFMAN, C.J., and SHARP, J., concur.
NOTES
[1] I.C. 1971, XX-X-XX-X; Ind. Stat. Ann. § 28-4538 (Burns 1970). Teachers have a statutory right to a thirty (30) minute lunch period.
[2] See Borowski v. Rupert (1972), Ind. App., 281 N.E.2d 502 for the proper application of Rule TR. 59(E) (7). The "contrary to" and "against the weight of the evidence" provisions of Rule TR. 59 (E) require a different test than the one being discussed in this opinion and have been purposely left out of our discussion.
[3] When a trial court grants a motion for judgment on the evidence under Rule TR. 50, there must be lacking reasonable evidence of probative value upon one or more of the factual issues necessary to support a verdict, and there must be no reasonable inference that can be drawn from such evidence in favor of the party against whom the motion is made. There is no finding of fact by the trial court upon factual issues to be submitted to the jury in a TR. 50 motion. The finding of fact by the trial court in a Rule TR. 50 motion is limited to questions which are a matter of law. See Mamula v. Ford Motor Company (1971) Ind. App., 275 N.E.2d 849.
[4] Only two questions of law are discussed here since once the determination is made as a matter of law that the act of Velma Hall is discretionary, there is no need to determine the other questions of law before the trial court. In addition to the two questions of law discussed in this opinion, the trial court would have had to determine two other questions of law had Velma Hall's action been ministerial and not discretionary. These questions of law are:

1. As a matter of law was there a duty on the part of the teacher and the School City of East Gary to provide adequate supervision during the recess period?
2. If there is a duty, what is the standard of care as a matter of law.
Bush v. Smith (1972), Ind. App., 289 N.E.2d 800; Kunkel v. Arnold (1959), 131 Ind. App. 219, 158 N.E.2d 660; Snyder v. Mouser (1971), Ind. App., 272 N.E.2d 627; Neal v. Home Builders, Inc. (1953), 232 Ind. 160, 111 N.E.2d 280.
[5] See also the General School Powers Act, I.C. 1971, 20-5-2-2(17); Ind. Stat. Ann. § 28-1710(17) (Burns 1970).
[6] I.C. 1971, XX-X-XX-X, footnote 1.
[7] For a chronological development of the governmental immunity doctrine, see the following cases: City of Goshen v. Myers (1889), 119 Ind. 196, 21 N.E. 657; City of Logansport v. Public Service Commission (1931), 202 Ind. 523, 177 N.E. 249; Flowers v. Board of Commissioners of Vanderburgh County (1960), 240 Ind. 668, 168 N.E.2d 224; Brinkman v. City of Indianapolis (1967), 141 Ind. App. 662, 231 N.E.2d 169; Klepinger v. Board of Commissioners County of Miami (1968), 143 Ind. App. 155, 239 N.E.2d 160; Perkins v. State (1969), 252 Ind. 549, 251 N.E.2d 30; Campbell v. State, supra; State v. Turner (1972), Ind. App., 286 N.E.2d 697; State v. Daley (1972), Ind., 287 N.E.2d 552.
[8] For similar fact situations but different theoretical treatment, see McDonald v. Terrebonne Parish School Board (1971), La. App., 253 So.2d 558; Fagan v. Summers (1972), Wyo., 498 P.2d 1227.
[9] See Chumbler v. Alabama Power Company (5th Cir.1966), 362 F.2d 161.
[10] See Rule TR. 83(2) of the Indiana Rules of Procedure for definitions of an executive officer.
[11] Dale H. Griesel's deposition covered 88 pages of the transcript and Velma J. Hall's deposition covered 39 pages of the transcript.
[12] The only exception is the cross-examination of Dale H. Griesel by use of a learned treatise, which is the subject of Issue Three and will be discussed in considerable detail.
[13] We note that no objection was actually made by the Defendants' counsel. He did make a statement as to why he thought the question irrelevant and unfair, but this statement came after the witness answered the question. The trial court treated this statement as an objection and sustained the objection. No motion was ever made to strike the answer of the witness or to admonish the jury to disregard the answer.