ERNEST PUCKETT, JR. *v.* CHARLES MILLER

[No. 3-977A221. Filed October 31, 1978.]

*Gene R. Duffin,* of Goshen, for appellant.

*W. L. McLaughlin, Simpson & McLaughlin,* of Goshen, for appellee.

STATON, J. — Charles Miller shot and killed Ernest Puckett, Jr.'s two coon dogs. Puckett sued Miller for the negligent destruction of his dogs. After Puckett rested his case, Miller moved for an involuntary dismissal. The trial court granted the motion. Puckett appeals. We affirm.

## I.

### Trial Rule 41(B) Motion

Puckett argues that because the trial judge granted Miller's motion for judgment on the evidence, involuntary dismissal — Ind. Rules of Procedure, Trial Rule 41(B), the judge necessarily weighed the evidence. Puckett characterizes such weighing as harmful error. Before we reach the question of whether weighing evidence pursuant to a TR. 41(B) motion is proper, we must determine whether the facts in this case support Puckett's premise that weighing was necessarily inherent in the trial court's decision to grant the motion.

Puckett presented evidence that he began running his dogs about 1:30 a.m.; a heavy rainstorm caused him to lose contact with the dogs between 2:00 and 2:30 a.m.; he searched for the dogs until about 4:30 or 5:00 a.m. and then went home to bed. He instructed his wife to continue to look for the dogs in the morning when she got up. She looked for the dogs from approximately 6:30 or 7:00 a.m. until 9:30 a.m. She then returned home, told Puckett that she was unable to locate the dogs. Later, Puckett continued the search.

Puckett called Miller as a witness. Miller testified that he was awakened by the sounds of his own dog barking. He looked out his window and saw the Puckett dogs near his chicken pen. He left the house and went to the garage where he got his shotgun. He saw the dogs trying to get into the chicken enclosure; the dogs were jumping and pouncing about; at least one dog got into the pen. Miller shot both dogs. Miller stated at trial that from his vantage point he did not see any collars on the dogs, did not recognize the dogs, and assumed the dogs were roamers. The dogs looked wet and dirty. Miller testified that he had lost chickens to dogs before.

After Miller shot the dogs, he found that one of the dogs had a collar on it; the collar gave Puckett's name and address. Miller removed the

collar and buried the dogs. Miller recognized Puckett's name and thought that Puckett had the reputation for pugnacity. When Puckett inquired about the dog, Miller lied and told Puckett he had not seen any animals. Later, thinking better of his deceit, Miller called Puckett's father (Puckett's phone number was unlisted) and told him that he had shot the dogs. Puckett called the police, accompanied the police to Miller's home, and confronted Miller. The dogs were exhumed; an autopsy revealed that the dogs had not ingested any chicken nor had they been pricked by any chicken feathers. Puckett, as well as the dogs' trainer, swore that the dogs had never before bothered any livestock or fowl.

The language within TR. 41(B) permits the trial court to grant involuntary dismissal after the plaintiff has presented his case if "considering all the evidence and reasonable inferences therefrom in favor of the party to whom the motion is directed, to be true, there is no substantial evidence of probative value to sustain the material allegations of the party against whom the motion is directed." Was there substantial evidence of probative value to sustain Puckett's claim against Miller?

Initially, we acknowledge that Puckett phrased his complaint in terms of negligence, and the trial judge seemed to imply by his judgment that Puckett was not at liberty to change theories mid-trial, *i.e.,* if negligence was not proven, Puckett could not prevail. Civil litigation has evolved into a process of substance rather than forms. The pleadings could have been made to conform to the evidence at any time during the trial. *See Ayr-Way Store, Inc. v. Chitwood* (1973), 261 Ind. 86, 300 N.E.2d 335. Therefore, our analysis of the evidence must be rather broad:   could Puckett's material allegations be sustained on any theory?

*A.   Negligence Theory.*

The trial court correctly enunciated the essential components of negligence:   (1) duty imposed by law to do or not do a certain act; (2) breach of that duty; (3) injury caused by the breach. Miller specifically admitted that he *purposefully* shot both dogs. The remaining question is whether he had the right to shoot the dogs, not whether he had a duty not to shoot them.

*B. Statutory Right.*

It is essentially undisputed that Puckett's dogs were unattended and trespassing upon Miller's property. Two statutes address this situation:

"Dog that has killed, chased, or worried stock or fowls — Killing — Penalty for keeping. — Any dog that is known to have killed, maimed, chased or worried any sheep, cattle, horses, swine or other livestock or fowls, unless accompanied by his master or some other person, may be killed by any person, and any person who shall own, keep or harbor any dog, after he knows that such dog has killed or maimed, chased or worried any sheep, cattle, horses, swine, other livestock or fowls shall be fined in any sum not less than ten [\$10.00] nor more than fifty dollars [\$50.00]."

IC 1971, 15-5-8-1, Ind.Ann.Stat. § 16-203 (Burns Code Ed.).

"Killing roaming dog. — If any dog shall be found roaming over the country unattended by his master or owner or his owner's agent, it shall be lawful to kill such dog."

IC 1971, 15-5-8-3, Ind.Ann.Stat. § 16-204 (Burns Code Ed.).

The factual conflict stems particularly from Puckett's allegations that the dogs had never bothered any fowl before and Miller's unequivocal statement that the dogs were jumping and pouncing about in a chicken enclosure. Miller's destruction of the dogs was statutorily protected (and the TR.41[B] motion properly granted) if either of two situations existed:   (1) Miller knew that the dogs had worried his chickens; (2) the dogs were found roaming over the country unattended.

Puckett encourages this Court to hold that under TR. 41(B) we are constrained to view only the evidence and inferences favorable to Puckett in order to determine whether dismissal should have been ordered. Obviously, Miller's statement that he saw the dogs worrying[1] his chickens is not favorable to Puckett's case, and Puckett would have us disregard it. He argues that we should draw the reasonable inference (from the statements of the trainer and Puckett himself) that since the

---

1.   "Worrying" livestock or fowl has been held generally to include acts such as running after, chasing, or barking. *See* 46 Words and Phrases 353-354 (1970). Miller stated that the dogs were pawing at the chicken pen, running, and pouncing at the chickens.

dogs had *not been known* (by him) to have bothered fowl in the past, they *did not* bother Miller's fowl on the day they were shot. If the dogs were not worrying Miller's chickens, Miller could not have been justified in shooting them.

We cannot find that an inference that the dogs were *not* worrying the chickens in Miller's barnyard would have been *necessarily* reasonable at all. It is undisputed that the dogs were killed on August second on Miller's property. Puckett testified that August first was the first day of the running season for coon dogs and that his dogs had not been run in the area since March. The dogs were wet and dirty. Puckett admitted that one dog did not have a collar. Miller stated that he saw no collar. Even if we were to indulge in the inference that the dogs had no untoward motives in being in the vicinity of the chickens, Puckett offered no evidence that the dogs were *not* jumping and pouncing about. A dangerous propensity on the part of an animal may be deduced from even playful conduct. *Doe v. Barnett* (1969), 145 Ind.App. 542, 251 N.E.2d 688. An owner or keeper of a domestic animal is bound to take notice of general propensities of the class to which it belongs as well as propensities peculiar to the animal itself; insofar as such propensities are of a nature *likely* to cause injury he must exercise reasonable care to prevent such injury. *Id.*

Furthermore, the evidence clearly showed that the dogs were roaming unattended. Puckett acknowledged that he knew the dogs were loose, yet he went home to bed. Several hours passed between the time he went to bed and the time his wife began the search. Miller's shooting of the dogs was protected by the law in that the undisputed facts show that the dogs were shot during a period of time in which attempts to reclaim the dogs had been temporarily abandoned.

Webster defines "roam" as (1) "to go from place to place without purpose or direction" or (2) "to travel purposefully unhindered through a wide area." "Roam" and "run at large" are used synonymously in statutes and case law. IC 1971, 15-2-4-21, Ind.Ann.Stat. § 16-1722 (Burns Code Ed.) (now IC 1971, 15-2.1-21-8 [Burns Code Ed., Supp. 1977]) provides that "[n]o owner or person responsible for any domestic animal shall permit such animal to run at large." IC 1971, 15-2-4-21, *supra*, covers the same subject matter covered by IC 1971,

15-5-8-1, *supra,* and IC 1971, 15-5-8-3, *supra.* Statutes *in pari materia* are to be construed together. *State v. Gerhardt* (1896), 145 Ind. 439, 44 N.E. 469; *Wayne Township v. Lutheran Hospital* (1974), 160 Ind.App. 427, 312 N.E.2d 120. IC 1971, 15-2-4-21, *supra,* has been interpreted to mean that when an owner has actual or constructive knowledge that his animal is running at large, he is deemed to have permitted the same. *Sork v. Taylor Bros., Inc.* (1971), 150 Ind.App. 626, 277 N.E.2d 5. It is a logical construct that Puckett must be deemed to have permitted the roaming.

Puckett relies very heavily upon the case of *Seidner v. Dill* (1965), 137 Ind.App. 177, 206 N.E.2d 636. We distinguish that case from the present consideration for four important reasons: (1) the appellate division applied well-known rules of review in affirming a decision in favor of the plaintiff-dog owner (the burden on appeal was vastly different); (2) the dog-owner and dog-shooter in that case lived in close proximity, and there was a real question of fact as to whether the dog was even on the dog-shooter's property when it was killed (here, by Puckett's testimony, the dogs were about 3-½ to 4 miles from the area Puckett released them and were definitely on Miller's land when they were shot); (3) the dog-owner made specific attempts to pen the dog (here, Puckett knew the dogs were loose, yet stopped searching); and (4) the trial court was faced with conflicting evidence but found that the dog did not have a reputation of viciousness or a roaming disposition (here, Miller acknowledged that he did not recognize the dogs, saw no collars, and had had trouble with dogs killing his chickens in the past). To the extent that *Seidner v. Dill, supra, can* be read to derogate the *plain meaning of the statutes prohibiting roaming dogs,* we must overrule it. It is the province of the legislature to enact exceptions to its clearly worded proscriptions.

By interpreting the applicable statutes, we hold that Miller was entitled to shoot the dogs which he found roaming on his property, worrying his chickens. (It is immaterial that the dogs had not eaten or killed any chickens before Miller shot them.) Moreover, we reached this conclusion without the necessity for weighing the evidence presented at trial. Therefore, we do not believe that the trial court erred in granting Miller's TR. 41(B) motion.

## II.

### Weighing the Evidence

As we have discussed, we do not believe that the trial judge necessarily weighed the evidence in order to reach his decision. But, because Puckett has so strenuously argued this issue on appeal, we shall briefly address the propriety of weighing evidence in ruling on a TR. 41(B) motion.

The appellate courts of Indiana have consistently held that the trial court does not commit harmful error in weighing evidence where, as here, both parties have testified. *See Powell v. Powell* (1974), 160 Ind.App. 132, 310 N.E.2d 898; and *Fielitz v. Allred* (1977), 173 Ind.App. 540, 364 N.E.2d 786. Both Puckett and Miller testified; both "versions" (if indeed there had been any material conflict) of the story were before the court. Puckett has not demonstrated any prejudice.

Additionally, this Court believes that weighing is permissible (and proper) *in all cases* where the TR. 41(B) motion is made after the plaintiff has rested. Weighing is mandated under the federal rules[2]; and weighing is the only logical purpose for the rule in Indiana. The plain language of the rule is that

> "considering all the evidence and the *reasonable inferences therefrom* in favor of the party to whom the motion is directed, to be true, there is no *substantial* evidence of *probative* value to sustain the material allegations of the party against whom the motion is directed. The court *as trier of the "facts may then determine them* and render judgment against the plaintiff. . . ." (Emphasis added.)

Cases construing this rule in the past have either misquoted the rule[3] or have incorrectly equated TR. 41(B) with TR. 50.[4] The trial rules are

---

2. *See* Harvey, 3 Indiana Practice 217-218; 5 Moore's Federal Practice 1156-1158.

3. *Building Systems, Inc. v. Rochester Metal Prod., Inc.* (1976), 168 Ind.App. 12, 340 N.E.2d 791, substitutes the word "only" for the word "all" before "the evidence" which the trial court is to consider.

4. *Ohio Casualty Insurance Company v. Verzele, et al.* (1971), 148 Ind.App. 429, 267 N.E.2d 193, holds that weighing is impermissible. The rationale of the decision in that respect is particularly weak in that the Court equated TR. 41(B) with TR. 50. The two rules fulfill the same function but are not equal in operation. *See Miller v. Griesel* (1973), Ind.App., 297 N.E.2d 463.

to be construed to secure the just, speedy, and inexpensive determination of every action. TR. 1. In a trial to the court, it is nonsense (and a waste of judicial time) to require a judge to sit through a presentation by the defendant when the plaintiff has failed to present a convincing case. If the rule had not intended that the trial judge weigh the evidence in ruling upon a TR. 41(B) motion, we cannot comprehend why the rule utilizes so many judgment words ("reasonable," "substantial," "probative") and especially designates the court as "trier of the facts" who is to "determine them." Determine means weigh and decide.

Therefore, even *had* the trial court weighed evidence in granting Miller's TR. 41(B) motion, it would not have been incorrect in doing so. We affirm the judgment granting the TR. 41(B) motion.

Chipman, J., (by designation), Concurs in Result and Dissents in Part with Opinion;

Hoffman, J., Dissents with Opinion.

## OPINION CONCURRING IN RESULT
## AND DISSENTING IN PART

CHIPMAN, J. — I concur in the conclusion of Judge Staton that the trial court did not err in granting Defendant Miller's TR. 41(B) motion and that the appellant has failed to demonstrate prejudice. Since the defendant was called as a witness by the plaintiff and testified as to the events of August 2, 1975 it is difficult to imagine what additional evidence could have been presented by the defendant that would have bolstered the plaintiff's case and thus altered the final judgment, had the court denied the defendant's TR. 41(B) motion.

The Court of Appeals has had this similar issue before it on several previous occasions.[1] The most recent case was *Fielitz v. Allred* (1977), 173 Ind.App. 540, 364 N.E.2d 786 and was commented upon by Dean William F. Harvey in his works INDIANA PRACTICE[2] in which he stated,

---

1.  *Ohio Casualty Insurance Company v. Verzele* (1971), 148 Ind.App. 429, 267 N.E.2d 193; *Clark v. Melody Bar, Inc.* (1971), 149 Ind.App. 245, 271 N.E.2d 481; *Miller v. Griesel* (1973), Ind.App., 297 N.E.2d 463; *Powell v. Powell* (1974), 160 Ind.App. 132, 310 N.E.2d 898; *Building Systems, Inc. v. Rochester Metal Products, Inc.* (1976), 168 Ind.App. 12, 340 N.E.2d 791; *Fielitz v. Allred* (1977), 173 Ind.App. 540, 364 N.E.2d 786.

2.  W. HARVEY, INDIANA PRACTICE, 1970.

"it is submitted that the Court of Appeals erred in *Fielitz,* and in the line of cases it represents."[3] Obviously Dean Harvey is urging that Indiana follow the various Circuit Courts of Appeal that have interpreted the comparable Federal Rule as giving the trial court the right to weigh the evidence in a trial to the court in deciding a TR. 41(B) motion.

Since comparisons have frequently been made between the Indiana and Federal Trial Rules, it behooves us to examine these two rules [41(B)]. The pertinent part of the Federal Rule reads as follows:

> . . . the Defendant, . . . may move for a dismissal on the ground that upon the facts and the law the Plaintiff has shown no right to relief. The Court, as trier of the facts, may then determine them and render judgment against the Plaintiff. . .[4]

The similar portion of the Indiana Trial Rule states:

> . . . the opposing party . . . may move for dismissal on the ground that *considering all the evidence and reasonable inferences therefrom in favor of the party to whom the motion is directed to be true, there is no substantial evidence of probative value to sustain the material allegation of the party against whom the motion is directed.* The Court as the trier of the fact may then determine them and render judgment against the Plaintiff . . .[5] (emphasis added).

In order to gain an insight as to the discussions held by the Civil Code Study Commission when drafting the Indiana Trial Rules an examination was made of Professor R. Bruce Townsend's book on INDIANA RULES OF CIVIL PROCEDURE.[6] It is interesting to note that the proposed draft of TR. 41(B) by the Indiana Civil Code Study Commission in pertinent part is identical to the Federal Rule and not the rule finally adopted by the Indiana Supreme Court on July 29, 1969 after enactment by the 1969 General Assembly.[7]

The comments of the Civil Code Study Commission with regards to

---

3. 3 W. HARVEY, INDIANA PRACTICE, 217-218 (1978 Supp.)

4. *Federal Rules,* TR. 41(B).

5. Indiana TR. 41(B).

6. INDIANA RULES OF CIVIL PROCEDURE, 1968.

7. IC 1971, 34-5-1-1.

TR. 41(B) states, "This fulfills the function of a motion for a directed verdict in a jury case (a motion for judgment on the evidence under Rule 50). *It will not modify present Indiana practice to any degree*[8] (emphasis added). The commission then cites the case of *Garrett v. Estate of Hoctel* (1957), 128 Ind.App. 23, 142 N.E.2d 449 (transfer denied) as setting forth the standard to guide the trial court when a motion is made for a judgment at the conclusion of the Plaintiff's case.

That decision states:

> . . . in determining upon such motion, *the court must not weigh the evidence and it must exclude all conflicting evidence that is favorable to the plaintiff*[9] (emphasis added).

In *Garrett* the trial court granted the Defendant's Motion for Judgment at the conclusion of the Plaintiff's case and the Court of Appeals, after reviewing the evidence most favorable to the Plaintiff, reversed and remanded on the grounds that the evidence and reasonable inferences therefrom were sufficient against the Motion for Judgment which had been made by the Defendant at the conclusion of the Plaintiff's case.

Perhaps the better rule in a trial without the intervention of a jury would be to permit the trial judge to weigh the evidence, as is now permitted in the majority of the Federal Circuit Courts of Appeal, but when we consider the previous decisions in Indiana prior to the adoption of the rules of Civil Procedure, combined with the comments of the Civil Code Study Commission and the specific language of TR. 41(B) as it is presently written, it would lead to the conclusion that until TR. 41(B) is properly amended the only interpretation that can be given is that the trial court cannot weigh the evidence at the conclusion of the Plaintiff's case but must treat it in the same light as it would a motion for a directed verdict (now judgment on the evidence) at the same stage of the trial proceedings as set forth in TR. 50. I do not feel that it is the function of the Indiana Court of Appeals to either legislate or attempt to amend the existing Trial Rules.

---

8. TOWNSEND, INDIANA RULES OF CIVIL PROCEDURE, 169.

9. *Garrett, supra* p. 453.

## DISSENTING OPINION

HOFFMAN, JUDGE—I dissent from the majority opinion.

I concur in Judge Chipman's concurring opinion regarding the TR. 41(B) motion.

However, the court committed further error in that it did not construe IC 1971, 15-5-8-1, Ind.Ann.Stat. § 16-203 (Burns Code Ed.) and IC 1971, 15-5-8-3, Ind.Ann.Stat. § 16-204 (Burns Code Ed.) as interpreted in *Seidner v. Dill* (1965), 137 Ind.App. 177, 206 N.E.2d 636.

*Seidner v. Dill, supra,* correctly interprets those statutes, especially the well-reasoned and eloquent concurring opinion of Justice Hunter.

I would reverse the trial court.

NOTE—Reported at 381 N.E.2d 1087.