**Allen CAIN, Appellant**
**(Plaintiff Below),**

v.

**BOARD OF COMMISSIONERS OF CASS COUNTY, Indiana; the Cass Park & Recreation Board and Cass County, Appellee (Defendant Below).**

No. 3–585–A–131.

Court of Appeals of Indiana,
Third District.

April 15, 1986.

Donald W. Shelmon, Randle & Shelmon, Rensselaer, for appellant.

Jay T. Hirschauer, Hirschauer & O'Neill, Logansport, for appellee.

STATON, Presiding Judge.

Allen Cain brought an action against the Board of Commissioners of Cass County, the Cass Park and Recreation Board and Cass County (hereinafter collectively referred to as Cass County) for severe personal injuries Cain suffered in a diving accident at France Park in Cass County. Twelve days before the scheduled trial date of November 27, 1984, the County filed a motion for judgment on the pleadings pursuant to Indiana Rules of Procedure, Trial Rule 12(C).[1] A hearing on the motion was held November 23, 1984. The docket sheet shows that the day after the hearing the court notified the parties of "its continuation of trial date with the present intention to grant defendant's [sic] motion for summary judgment with written order to follows [sic]." On December 14 the court ordered judgment entered for Cass County. Later, upon denying Cain's motion to cor-

rect error, the court, in a brief memorandum, explained that summary judgment against Cain was appropriate because the County was immune from suit under the Indiana Tort Claims Act. Ind. Code 34–4–16.5–3.

We set out the issues for review substantially as Cain has presented them:

I. Did the trial court err in granting the County's motion for judgment on the pleadings when the court had to delay the actual trial setting in order to rule on the motion?

II. Were there any genuine issues of material fact in question which rendered the trial court's ruling improper?

III. When a governmental entity is engaged in a proprietary function are the patrons owed a private duty which eliminates the applicability of the sovereign immunity statute?

We affirm.

I.

Injury and Supervision

On July 17, 1982 Allen Cain, then twenty-seven years old, went with several of his friends to France Park outside Logansport in Cass County. The park offers a variety of recreational facilities including campgrounds, horseback riding and a public swimming beach where Cain and his friends went for the afternoon. The beach facilities are at one end of a former stone quarry which is surrounded by rocky cliffs of varying heights. A rope with buoys extends across the width of the quarry from east to west at approximately its midpoint, marking the swimming area and also the park boundary. The other half of the quarry and the surrounding land is private property owned by James Zoubal.

On the east side of the quarry a series of lower cliffs, ranging from 20 to 30 feet

---

1. (C) *Motion for Judgment on the Pleadings.* After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

high, extend to the south of the beach within the roped off area. Rising south of these lower cliffs are cliffs of from 70 to 90 feet high. The higher cliffs are beyond the roped off swimming area and are, in fact, on the land owned by Zoubal. A path leads from the beach up to the lower cliffs and continues on a rocky course up to the higher elevations.

As Cain and his friends swam or sat on the beach, they observed people jumping into the water from both the lower and the higher cliffs. The depositions of park employees establish that signs and a cable across the path ordinarily mark the park boundary line which is below the high cliffs. Nevertheless, Cain observed and park employees acknowledged that some people were jumping from the high cliffs into the water. Cain and his friends took the path from the beach up the cliffs and, continuing past the lower cliffs, climbed up to the high cliffs. Cain did not recall seeing any signs or a cable. After watching several people jump from the high cliffs, Cain decided to do a swan dive from the high cliff. It is undisputed that he was injured when his head struck the surface of the water. A scuba diver spotted Cain on the bottom of the lake and rescued him. Cain is a quadriplegic as a result of his injuries.

Cain's complaint alleges that the park personnel were negligent in supervising, guarding, governing and controlling park patrons, including Cain; that Cass County permitted patrons to dive from the cliffs and was negligent in failing to warn of the dangers or to prevent patrons from diving off the cliffs on Zoubal's land.[2]

## II.

### Judgment on the Pleadings

 Cain argues initially that the trial court erred in granting the County's motion for judgment on the pleadings because the motion was not timely filed and result-ed in a delay of the trial, contrary to the dictates of T.R. 12(C). Ordinarily, a motion for judgment on the pleadings should be made promptly after the close of the pleadings or the court may refuse to hear the motion on the ground that its consideration will delay or interfere with the commencement of the trial. The determination whether the motion constitutes a delay of trial is within the discretion of the trial judge. 5 Wright & Miller, *Federal Practice and Procedure:* Civil § 1367. If it seems clear, however, that the motion may effectively dispose of the case, the court should permit it regardless of any possible delay its consideration may cause. *Id.* Litigants should not be required to go through a full trial on the issues when a dominating legal principle that governs liability is dispositive of the case. *See Moss v. School District of Norristown* 33 F.R.D. 518 (D.C.Pa.1963). We find persuasive these common sense interpretations of the federal rule which Indiana's Rule 12(C) follows. The motion disposed of the case without the need for a costly and time consuming trial. The trial judge was within his discretion in considering the motion.

## III.

### Summary Judgment

The trial court, in ruling on Cass County's motion for judgment on the pleadings, evidently considered matters outside the pleadings (several depositions were on file) and treated the motion as one for summary judgment pursuant to T.R. 12(C). See Note 1, *supra.*

 Cain argues, there were genuine issues of material fact which precluded summary judgment. Our standard of review in such a case is the same as for any summary judgment—we will affirm if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. T.R. 56(C). A genuine issue exists if the trial court would

---

**2.** Zoubal was originally a defendant in the suit, but prevailed on a motion for summary judg- ment from which no appeal has been taken.

be required to resolve disputed facts. *Jones v. City of Logansport* (1982) Ind. App., 436 N.E.2d 1138, 1143. Summary judgment is inappropriate if conflicting inferences arise from the facts. *McKenna v. City of Fort Wayne* (1981) Ind.App., 429 N.E.2d 662, 664. In order to preclude summary judgment, the conflicting facts or inferences must be decisive of the action or a relevant secondary issue. *Jones v. City of Logansport, supra.* Doubts are resolved in favor of the nonmoving party. *Poxon v. General Motors Acceptance Corp.* (1980) Ind.App., 407 N.E.2d 1181.

For purposes of summary judgment, the trial court resolved all inferences in favor of Cain, assuming that Cain would be able to prove the defendants' negligence and that Cain would be able to overcome allegations of contributory negligence. The court held, however, that as a matter of law Cain could not recover because the defendants were governmental entities entitled to immunity under the Indiana Tort Claims Act. IC 34–4–16.5–3. The portions of that statute pertinent to our review read as follows:

> A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:
>
> (1) the natural condition of unimproved property;
>
> \* \* \* \* \* \*
>
> (4) the condition of an unpaved road, trail, or footpath, the purpose of which is to provide access to a recreation or scenic area;
>
> \* \* \* \* \* \*
>
> (6) the performance of a discretionary function;
>
> (7) the adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment[.]

The trial court relied upon subdivisions (1) and (4) in holding the county immune, stating that the "instrumentality that caused the injury was the unimproved lake property into which the plaintiff dove."

Presumably the court's citation of subdivision (4) was in reference to the path by which Cain reached the high cliffs.

■ Resolving all factual conflicts and inferences in favor of Cain, as the trial court did, we agree that the county is immune from liability as a matter of law, but for different reasons than those cited by the trial court. The tenor of Cain's complaint is that the county was negligent, not because of the condition or maintenance of the park property, but because of the failure of the park employees to supervise park patrons, including Cain, and prevent them from straying off the park property and onto the high cliffs on Zoubal's property where jumping or diving presented a danger. Jumping or diving from the lower cliffs, within the park boundary was a permissible activity of which many people took advantage. It was common knowledge among the lifeguards and park rangers at France Park that some park patrons climbed beyond the park boundaries to the higher cliffs to jump into the lake. The employees who were deposed all testified that they attempted to stop people from going onto the high cliffs; that there were signs indicating the park boundary; that the lifeguards whistled or shouted to swimmers who climbed up and jumped from one of the high cliffs and that the rangers regularly climbed up and ordered people to leave the high cliff area. People continued to jump from the high cliffs despite these efforts.

We regard the county's failure to keep people off the high cliffs as falling squarely within subdivision (7) of the Tort Claims Act. Assuming *arguendo* that it was a park rule that patrons not be permitted to jump off the high cliffs into the water lying outside the park boundary, the failure to enforce that rule in Cain's case is specifically exempted from liability under subdivision (7).

The case of *State, Dept. of Natural Resources v. Morgan* (1982) Ind.App., 432 N.E.2d 59 is instructive. A truck carrying plaintiff's husband and two children left the road and careened into a water-filled

strip mining pit. Plaintiff's husband drowned. Plaintiff sued the state for failing to require safety measures for a pit located near a public roadway. The court held that even assuming that the State had a duty (which it did not) not to issue permits, the failure of the State to take appropriate action would fall within the umbrella of governmental immunity of subdivision (7), *Id.*

In *Seymour National Bank v. State* (1981) Ind., 422 N.E.2d 1223 our Supreme Court rejected any distinction between the decision to enforce a law and the actual implementation of that decision. In *Seymour National Bank*, a police officer involved in a high speed chase collided with a motorist traveling on the same road. The Supreme Court held that under the statute *all* acts of enforcement save false arrest and imprisonment are immune. *Id.* at 1226. The inference is that even negligent enforcement is immune.

In this case, even though the park attempted to enforce its rule against park visitors jumping from the high cliffs and even though it was negligent in its enforcement of that rule, it cannot be held liable.

### IV.

### Immunity and Special Duty

Cain seeks to avoid the county's immunity under the statute by presenting a confused argument regarding a private duty owed when a governmental entity is engaged in a proprietary function. Here, Cain argues that because France Park charged an entrance fee,[3] the county was not engaged in a merely public function but was engaged in a proprietary function from which a private duty to Cain arose. Cain's argument is cast in terms of the old governmental function—proprietary function distinctions which were abrogated finally and completely in Indiana in *Campbell v. State* (1972) 259 Ind. 55, 284 N.E.2d 733. Although vestiges of sovereign im-

munity were recognized as remaining by the Court in *Campbell,* and the legislature essentially codified those remaining immunities in the Tort Claims Act, we no longer recognize the proprietary function as the basis for governmental liability. The concept of a private duty owed to an individual has received recognition in cases where the conduct of the governmental entity has narrowed a duty owed to the general public into a special duty to an individual. Thus, in *Estate of Tanasijevich v. City of Hammond* (1978) 178 Ind.App. 669, 383 N.E.2d 1081 this court considered whether the police owed a special duty to the plaintiff to prevent criminal activity which was in retaliation for plaintiff's cooperation with police in a criminal investigation. We held that while breach of a general duty to prevent criminal activity would not impose liability for damages which a particular individual suffers, a special duty to protect an individual from criminal retaliation for the individual's collaboration with police might arise if that danger appears likely to occur. *Id.,* 383 N.E.2d at 1084.

Cain cites no authority for the proposition that payment of an entrance fee establishes a private duty owed to him and our review of the cases dealing with the private duty concept under our current governmental immunity law reveals no support for Cain's argument. Even under the governmental versus proprietary function analysis, most jurisdictions which have considered whether payment of a fee deprives a government entity of its immunity have declined to impose liability on that basis. *See* 55 ALR2d 1434, § 7 and cases collected therein. We find nothing which persuades us that the private duty exception to governmental immunity should be extended.

The judgment of the trial court is affirmed.

HOFFMAN and GARRARD, JJ., concur.

---

**3.** There is a conflict in the evidence regarding whether France Park charged an admission fee on the day of Cain's accident since a special promotion was going on that day. For purposes of our discussion, however, we will assume Cain paid the entrance charge which the evidence established as being between fifty cents and one dollar in 1982.