Mary T. **BUCKLEY**, Allstate Insurance Company, Plaintiffs–Appellants,

v.

**STANDARD INVESTMENT COMPANY,** d/b/a Charleston Apartments South, Citizens Gas & Coke Utility, John Doe I and John Doe II, Defendants–Appellees.

No. 41A01–8809–CV–282.

Court of Appeals of Indiana, First District.

April 10, 1989.

Arthur J. Sullivan, Patrick M. O'Brien, Steers, Sullivan, McNamar & Rogers, Indianapolis, for plaintiffs-appellants.

James R. McClarnon, Philip B. McKiernan, Hackman, McClarnon, Hulett & Cracraft, Harry V. Huffman, Indianapolis, Stephen L. Huddleston, Franklin, for defendants-appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

Plaintiff-appellants, Mary T. Buckley and Allstate Insurance Company (Buckley), appeal the decision of the Johnson Circuit Court granting summary judgment in favor of defendant-appellee, Citizens Gas & Coke Utility (Citizens), on her suit to recover for personal injuries and property damages she sustained in a gas explosion and fire.

We affirm.

## STATEMENT OF THE FACTS

Buckley lived in an apartment complex known as Charleston South Apartments located in Indianapolis, Indiana. During the morning of December 24, 1983, three successive small fires ignited in the kitchen of Buckley's apartment within the span of approximately three hours. After successfully extinguishing the third fire, members of the Perry Township Fire Department determined that the fires may have been caused by a gas leak. They notified Citizens of the problem and advised it to shut off the gas and inspect the gas lines. That same morning a representative from Citizens arrived at Buckley's apartment to inspect the gas lines. After inspecting the lines, he did not detect any gas leaks and the gas service to Buckley's apartment was restored. Two days later, on December 26, a fourth and final fire erupted in the dining room along the common wall adjacent to the kitchen. This fire totally destroyed Buckley's apartment and personal belongings.

Following the final fire, the concrete slab floor in the kitchen was excavated and a cracked gas line lying beneath was discovered. Thereafter, Buckley filed a complaint against Citizens, inter alia, alleging it had negligently inspected her gas lines. Citizens filed an answer to Buckley's complaint denying liability and asserting various affirmative defenses including that it was immune from liability under the Indiana Tort Claims Act. On May 7, 1987, Citizens filed a motion for summary judgment on the same basis. Specifically, Citi-

zens alleged it was immune from liability for making an inadequate or negligent inspection pursuant to IND.CODE 34–4–16.-5–3(11). Following a hearing on the motion, the trial court entered summary judgment on behalf of Citizens determining that as an executive department of Indianapolis, Citizens was entitled to the benefits of the Indiana Tort Claims Act and was immune from liability under IND.CODE 34–4–16.5–3(11). Buckley subsequently instituted this appeal.

## ISSUE

Buckley raises the following issue for our review:

> Whether the trial court erred in determining that Citizens was immune from liability under IND.CODE 34–4–16.5–3(11).

## DISCUSSION AND DECISION

In her complaint, Buckley alleged that Citizens negligently inspected her gas lines as a result of which she suffered personal injuries and property damages. Notwithstanding the disputed issue of negligence, the trial court entered summary judgment in favor of Citizens on the basis of the immunity from tort claims extended by IND.CODE 34–4–16.5–3(11). That statute states:

> A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:
>
> \* \* \* \* \* \*
>
> (11) failure to make an inspection, or making an inadequate or negligent inspection, of any property, other than the property of a governmental entity, to determine whether the property complied with or violates any law or contains a hazard to health or safety.

■ Buckley contends that Citizens is not entitled to immunity because it is a public utility subject to liability pursuant to IND.CODE 8–1–2–107. She claims that Citizens has been defined as a public utility by virtue of the fact that the statute under which it operates is entitled "Department of *Public Utilities* Of A Consolidated

City." Additionally, she argues that Citizens is not subject to IND.CODE 8–1.5–1–1 to –4–19, the provisions regulating municipally owned utilities.

Buckley's assertion directly challenges Citizens' status as a governmental entity. IND.CODE 34–4–16.5–2(2) defines the term governmental entity as "the state or a political subdivision of the state." In turn, the term political subdivision is defined by IND.CODE 34–4–16.5–2(5) to include a:

 (i) county,

 (ii) township,

 (iii) city,

 (iv) town,

 (v) separate municipal corporation,

 (vi) special taxing district,

(vii) state college or university,

(viii) city or county hospital,

 (ix) school corporation, or

 (x) board or commission of one (1) of the entities listed in clauses (i), through (ix), inclusive, of this subdivision;

It is undisputed that Citizens is operated under the authority of IND.CODE 8–1–11.-1–1 to –25. That statute creates, in addition to the other executive departments of a consolidated city, a department of public utilities under the supervision and control of a seven member Board of Directors for Utilities. IND.CODE 8–1–11.1–1(a). Clearly, Citizens qualifies as a political subdivision under subsection (iii) or (x) of the definition quoted above. That the title of the act under which Citizens operates utilizes the term public utility is of no consequence. Moreover, we note that IND. CODE 8–1–11.1–3.1 makes several provisions of IND.CODE 8–1.5 applicable to Citizens. Likewise, IND.CODE 8–1–11.1–3(c)(9) expressly provides that Citizens' rules and rates for service shall be subject to the same standards and approval procedures that are applicable to municipally owned utilities. Thus, Citizens is subject to many of the same regulatory provisions that govern municipally owned utilities. That these provisions are made applicable to Citizens under a different statute, however, does not deprive Citizens of its status

as a governmental entity entitled to immunity under the Tort Claims Act.

■ In order to qualify for the immunity extended under IND.CODE 34–4–16.5–3(11), however, a governmental entity must satisfy several other requirements. The most important of these requires that the property inspected must not be owned by the governmental entity which conducts the inspection. In an affidavit supporting the motion for summary judgment, Carmen Cacia, the employee who performed the inspection, stated that he tested the gas lines beyond the meter outlet belonging to the property owner. This statement was unrefuted by any other evidence. The uncontroverted evidence before the trial court, therefore, was that the gas lines upon which the inspection was conducted were not Citizens' property. With regard to the other requirements for application of the immunity from liability granted by IND.CODE 34–4–16.5–3(11), there is no dispute that they have been satisfied here. Consequently, Citizens was entitled to immunity under the Tort Claims Act.

■ Buckley responds, however, that the immunity extended under the Tort Claims Act should be circumvented here. She argues that the tort claims statute is general in nature and cannot supercede a specific statute which imposes a special duty upon Citizens. Specifically, she argues that a specific duty was imposed upon Citizens in connection with inspecting her gas lines and restoring the service outage pursuant to the federal pipeline safety regulations appearing at 49 CFR Part 192, which regulations have been adopted and compliance with which is required under IND.CODE 8–1–22.5–6.

That statute provides that compliance with the federal pipeline safety regulations is required of "[a]ny person engaged in the transportation of gas or who owns, operates or leases pipeline facilities." Similarly, 49 CFR Part 192 prescribes minimum safety requirements "for pipeline facilities and the transportation of gas." The terms pipeline facilities is defined by IND.CODE 8–1–22.5–1(d) to include:

new and existing pipelines, rights-of-way and any equipment, facility or building used in the *transportation of gas* or in the treatment of gas during the course of transportation. (Emphasis added.)

In pertinent part IND.CODE 8–1–22.5–1(b) defines the term transportation of gas as follows:

The term "transportation of gas" means the gathering, transmission or distribution of gas by pipeline or the storage of gas....

Thus, pursuant to statute, the safety regulations upon which Buckley relies are only applicable with regard to the gathering transmission, or distribution of gas.

For purposes of 49 CFR Part 192, the distribution of gas is completed when the gas is delivered to a consumer at the meter on the consumer's premises. As found by the U.S. Department of Transportation, Office of Pipeline Safety, which administers and enforces the safety regulations relied upon by Buckley:

Transportation of gas means the gathering ..., transmission, or distribution of gas by pipeline or the storage of gas in or affecting interstate or foreign commerce. *Transportation of natural gas ends with the sale coupled with delivery of the gas to the ultimate consumer* so that, after the sale, the gas becomes a consumer item and is no longer in commerce.

38 Fed.Reg. 9084 (1973). Thus, gas lines located downstream of a consumer's meter are not subject to the federal regulations. It is undisputed here that the gas lines Citizens inspected were downstream and beyond Buckley's meter. As such, none of the federal regulations cited by Buckley imposed any mandatory duties upon Citizens in connection with inspecting her gas lines or restoring the service outage. They do not provide any basis upon which to circumvent the immunity extended by IND. CODE 34–4–16.5–3(11).

In addition to the federal pipeline safety regulations, however, the Indiana Utility Regulatory Commission has adopted additional minimum safety standards for pipeline safety. These additional minimum

standards are set forth under 170 I.A.C. 5-3-1 to -5. Compliance with these regulations is also mandated by IND.CODE 8-1-22.5-6. Buckley argues that the additional standards set forth at 170 I.A.C. 5-3-2(E)(1) and (2) impose an additional duty upon Citizens to properly inspect gas lines beyond the meter and to the consumer's appliance. These regulations state:

E. An operator may not initiate gas service for the customer (including for his own useage) without first ascertaining:

(1) the meter and regulator installation are proper for their intended use and pressure tight at the operating pressure;

(2) the piping from the meter to the customer's appliance is pressure tight at the operating pressure.

 Buckley's reliance upon these provisions, however, is misplaced. We first note that application of this regulation is limited to situations where service is being initiated or installed. It is undisputed that the activity at issue here did not involve the initiation of service. Accordingly, 170 I.A.C. 5-3-2(E)(1) and (2) fails to impose any special duty upon Citizens with regard to inspecting the gas lines and restoring the service outage. More importantly, Buckley fails to recognize that immunity presupposes liability. Thus, even if there existed a special duty upon Citizens to inspect the gas lines beyond the meter and up to Buckley's appliances and such was negligently undertaken and completed, Citizens would nevertheless be immune from liability under the express terms of IND.CODE 34-4-16.5-3(11). Finally, IND.CODE 8-1-22.5-11 specifically states:

Nothing in this chapter shall affect the common law or statutory tort liability of any person.

Clearly, the Indiana Tort Claims Act is a part of Citizens' statutory tort liability. Its application in the case at bar is not abrogated by the existence of the federal or Indiana pipeline safety regulations.

 Lastly, Buckley argues that governmental immunity should not be available to Citizens because it operates beyond the realm of public service. She asserts that the decision whether to grant Citizens immunity should be based upon an analysis of whether Citizens was operating in a governmental or proprietary capacity. Specifically, she argues that because Citizens allegedly makes a profit for the municipality on its services, it is operating in a commercial or proprietary capacity and should not enjoy immunity. Additionally, she contends that extending immunity to Citizens for its negligent acts violates her constitutional rights to equal protection and due process.

Buckley's reliance upon the distinction between the governmental and proprietary activities of a governmental entity is misplaced. Previously, this distinction was utilized as a basis to determine whether to apply the common law doctrine of sovereign or governmental immunity to shield a governmental unit from liability. This doctrine, however, has long since been abrogated and there is no longer available a grant of general immunity to governmental agencies. *See Campbell v. State* (1972), 259 Ind. 55, 284 N.E.2d 733. Thus, Buckley's argument regarding the governmental/proprietary distinction is irrelevant as such is no longer recognized as a valid basis upon which to assess governmental liability. *Cain v. Board of Commissioners of Cass County* (1986), Ind.App., 491 N.E.2d 544. In addition, we parenthetically note that to remove immunity from any governmental entity which generates a profit would be ludicrous. If such were the case, immunity would not be available to any entity which happened to earn revenue in excess of expenses. Rather, only those entities that operated at a deficit would be entitled to immunity.

 Also unavailing is Buckley's assertion that application of the Tort Claims Act in favor of municipal utilities only is an arbitrary exercise of tort liability and unconstitutional. The immunity provisions of the Tort Claims Act have been repeatedly found to satisfy all equal protection and due process requirements. *Seymour National Bank v. State* (1981), Ind., 428 N.E.2d 203; *Thompson v. State* (1981), Ind.App., 425 N.E.2d 167; *Krueger v. Bailey* (1980), Ind.App., 406 N.E.2d 665; *Holt v.*

*City of Bloomington* (1979), 181 Ind.App. 179, 391 N.E.2d 829. The legislature's decision to place certain limitations upon a governmental entity's tort liability is within its constitutional authority and promotes the recognized State interest in protecting the fiscal integrity of governmental entities. Thus, Buckley has failed to provide any valid basis to reverse the trial court's ruling. The facts not being in dispute, Citizens was entitled to summary judgment as a matter of law.

For the above reasons, the judgment is affirmed.

Judgment affirmed.

ROBERTSON, J., concurs.

RATLIFF, C.J. dissents with opinion.

RATLIFF, Chief Judge, dissenting.

The only question presented for our decision in this case is whether Citizens Gas and Coke Utility (Citizens), a gas utility owned by the Consolidated City of Indianapolis, is entitled to immunity under the Indiana Tort Claims Act, Indiana Code section 34–4–16.5–3(11). That question must be considered in the light of the intent and purpose of the immunity provisions of the Tort Claims Act, and, in that context, the question must be answered in the negative.

The policy underlying the immunity provisions of the statute is to protect public officials in the performance of their duties by preventing harassment by threats of civil litigation over decisions they make within the scope of their position, and to protect the fiscal integrity of governmental bodies by limiting tort damages. *Board of Comm'rs. v. King* (1985), Ind.App., 481 N.E.2d 1327. The question then becomes whether this protection extends to the operation of a business by the governmental body. In my view, it does not and should not. The fiscal integrity intended to be protected is the public treasury—the taxpayer's money—not the business revenue of the governmental body. The debts of a municipal utility are the debts of the utility and not those of the city. 1951 O.A.G. p. 141, 143. Therefore, since the public treasury is not threatened by tort actions against a municipally owned utility, the policy underlying the grant of immunity under the Tort Claims Act is not involved.

Our supreme court has stated:

"When a municipal corporation engages in activity of a business nature rather than one of a governmental nature, such as the supply of light and water or the operation of a railroad, which is generally engaged in by individuals or private corporations, it acts as such corporation and not in its sovereign capacity, [citations omitted] and a city operates its municipally owned utility plant in its proprietary capacity as a private enterprize [sic] subject to the same liabilities, limitations and regulation as any other public utility."

*City of Logansport v. Public Service Comm'n. of Indiana* (1931), 202 Ind. 523, 432, 177 N.E. 249, 252.

Granted the issue in *City of Logansport* was the authority of the Public Service Commission of Indiana to fix rates for the city owned electric utility, which holding was distinguished in *Meyers v. Evansville Water Works Dept.* (1970), 147 Ind.App. 372, 261 N.E.2d 88, and granted further that the quoted portion of the opinion relies upon the governmental-proprietary distinction which no longer is recognized, *Cain v. Board of Comm'rs.* (1986), Ind.App., 491 N.E.2d 544, the language employed by our supreme court in *City of Logansport* is instructive. That language clearly and unequivocally states that when government goes into a business enterprise of the type normally operated by private individuals or corporations, government operates that business on the same footing as private businesses. The philosophy announced by our supreme court, and the one to which I believe we should adhere, is that a government operated business enterprise is no different than a privately operated enterprise in the area of tort liability. Thus, I dissent from the majority's extension of the protection of the Tort Claims Act in this case to Citizens.

Although beyond the scope of the only question for decision in this case, the majority states that the standards set forth in

170 I.A.C. 5–3–2(E)(1) and (2) imposed no duty upon Citizens' because the installation in question was not an initial installation. In so stating, the majority overlooks the fact that service previously had been discontinued and was being reconnected. In my view, a reconnection is subject to the same requirements as an initial installation. Indeed, in 49 C.F.R. § 192.725 it is provided that "[e]ach disconnected service line must be tested in the same manner as a new service line, before being reinstated." Thus, a reconnection is for all practical and legal purposes, an initial installation. Thus, I disagree with the statements of the majority on this matter, although I consider them *dicta*.

My dissent is limited to the precise and narrow issue of whether, in this case, Citizens is clothed with immunity under the Tort Claims Act. I believe it is not. To extend the immunity as the majority has done runs counter to the purposes of the act. Whether, in this case, Citizens was under any duty, breached any duty, was negligent, or whether it proximately caused the loss involved, all are questions which are not before us, and upon which I express no opinion. But on the one issue presented, I cannot agree with the majority, and, therefore, respectfully dissent.